JOSHUA H. LERNER
CA Bar No. 220755
joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1124

ARI HOLTZBLATT (*pro hac vice pending*)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, D.C. 20037
Telephone: (202) 663-6000

***Attorneys for Defendants***
***YouTube, LLC, Google LLC,***
***and Alphabet Inc.***

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MERCOLA.COM, LLC and Dr. JOSEPH MERCOLA,<br><br>                    Plaintiffs,<br><br>        v.<br><br>YOUTUBE, LLC, GOOGLE LLC, and ALPHABET INC.,<br><br>                    Defendants. | Case No.  3:22-cv-05567-LB<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: May 18, 2023<br>Courtroom: Courtroom B<br>Time: 9:30 a.m.<br>Judge: Hon. Laurel Beeler |

1

2

## **TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION TO DISMISS ................................................1

STATEMENT OF REQUESTED RELIEF ...............................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................2

      A.    YouTube's Terms, Community Guidelines, And Medical Misinformation
            Policies ........................................................................................................2

            i.       YouTube's Discretion To Host Content ................................3

            ii.      Limitation On Liability .......................................................3

            iii.     Community Guidelines ........................................................4

      B.    YouTube's Removal of Mercola's Content ...................................................5

      C.    Mercola Files The Complaint Based On Termination ...................................5

STANDARD OF REVIEW ....................................................................................6

ARGUMENT ........................................................................................................6

I.     The Complaint Fails To Allege Breach Of Contract (Count I, II, IV)..........................6

      A.    Mercola Fails To Plausibly Allege Breach ...................................................7

            i.       The Community Guidelines Do Not Support A Claim For Breach............9

            ii.      The "Modifying this Agreement" Provision Does Not Support
                 Mercola's Claim For Breach ..............................................12

      B.    Mercola Fails To Plausibly Allege Damages.................................................14

            i.       The Liability Bar Forecloses Monetary Relief .........................14

            ii.      Mercola Is Not Entitled To Specific Performance (Count IV).................15

II.    The Complaint Fails To Allege Breach Of the Implied Covenant of Good Faith and
     Fair Dealing (Count III) ..........................................................................................17

III.   The Complaint Does Not Allege Unjust Enrichment (Count IV)....................................18

IV.   The Complaint Fails To Allege A Conversion Claim (Count V) ...................................19

V.    Mercola's Claims Are Barred By Section 230 ...........................................................19

CONCLUSION.....................................................................................................22

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Ahmed v. Twitter, Inc.*,
    603 F. Supp. 3d 857 (N.D. Cal. 2022) ........................................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................6, 11

*Bank of New York v. Fremont General Corp.*,
    523 F.3d 902 (9th Cir. 2008) ...........................................................................................19

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009)...................................20, 21, 22

*California Physicians Service, Inc. v. Healthplan Services, Inc.*,
    No. 3:18-CV-03730-JD, 2021 WL 879797 (N.D. Cal. 2021) .................................................16

*Caraccioli v. Facebook, Inc.*,
    167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) ...................9

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) .........................................................................................19

*Careau & Co. v. Security Pacific Business Credit, Inc.*,
    222 Cal. App. 3d 1371 (1990) ........................................................................................17

*Carma Developers (California) Inc. v. Marathon Development California, Inc.*,
    2 Cal. 4th 342 (1992) ....................................................................................................7

*Chappel v. Laboratory Corp. of America*,
    232 F.3d 719 (9th Cir. 2000) .........................................................................................22

*Daniels v. Alphabet Inc.*,
    No. 20-CV-04687-VKD, 2021 WL 1222166 (N.D. Cal. 2021) .................................... *passim*

*Darnaa, LLC v. Google, Inc.*,
    No. 15-CV-03221-RMW, 2015 WL 7753406 (N.D. Cal. 2015)...........................................14

*Darnaa, LLC v. Google LLC*,
    756 F. App'x 674 (9th Cir. 2018) ....................................................................................18

*Doe v. Google LLC*,
    No. 20-CV-07502-BLF, 2020 WL 6460548 (N.D. Cal. 2020)............................................12

*Donohue v. Apple, Inc.*,
    871 F. Supp. 2d 913 (N.D. Cal. 2012) ...............................................................................9, 16

*Ebeid v. Facebook, Inc.*,
    No. 18-cv-07030-PJH, 2019 WL 2059662 (N.D. Cal. 2019) ............................................18, 20

*Enhanced Athlete Inc. v. Google LLC*,
    479 F. Supp. 3d 824 (N.D. Cal. 2020) ...................................................................................8, 1

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) (en banc) .....................................................................................19

*Goddard v. Google, Inc.*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) .......................................................................................21

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News*,
    742 F.3d 414 (9th Cir. 2014) ........................................................................................................24

*Guz v. Bechtel National Inc.*,
    24 Cal. 4th 317 (2000) ..................................................................................................................17

*In re Zoom Video Communications Inc. Privacy Litigation*,
    525 F. Supp. 3d 1017 (N.D. Cal. 2021) ......................................................................................21

*Isaac v. Twitter, Inc.*,
    557 F. Supp. 3d 1251 (S.D. Fla. 2021) .......................................................................................16

*King v. Facebook, Inc.*,
    572 F. Supp. 3d 776 (N.D. Cal. 2021) ........................................................................................19

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ........................................................................................................3

*La'Tiejira v. Facebook, Inc.*,
    272 F. Supp. 3d 981 (S.D. Tex. 2017) ........................................................................................16

*Lewis v. Google LLC*,
    461 F. Supp. 3d 938 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) ...............8, 20

*Lewis v. Google LLC*,
    851 F. App'x 723 (9th Cir. 2021) ................................................................................................18

*Lewis v. YouTube, LLC*,
    244 Cal. App. 4th 118 (2015) ........................................................................................14, 15, 16

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ........................................................................................................6

*MGIC Indemnity Corp. v. Weisman*,
    803 F.2d 500 (9th Cir. 1986) ..........................................................................................................3

*Miami Herald Publishing Co. v. Tornillo*,
    418 U.S. 241 (1974) .......................................................................................................................16

*Mishiyev v. Alphabet, Inc.*,
  444 F. Supp. 3d 1154 (N.D. Cal. 2020), *aff'd*, 857 F. App's 907 (9th Cir. 2021)..............7, 11

*Morton v. Twitter, Inc.*,
  No. CV 20-10434-GW-JEMx, 2021 WL 1181753 (C.D. Cal. Feb. 19, 2021)........................9

*Murphy v. Twitter, Inc.*,
  60 Cal. App. 5th 12 (2021) ........................................................ *passim*

*National Institute of Family & Life Advocates v. Becerra*,
  138 S. Ct. 2361 (2018)...................................................................................16, 17

*NetChoice, LLC v. Attorney General, Florida*,
  34 F.4th 1196 (11th Cir. 2022) ............................................................................16

*O'Handley v. Padilla*,
  579 F. Supp. 3d 1163 (N.D. Cal. 2022) ..........................................................16, 17

*Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*,
  802 F.2d 362 (9th Cir. 1986) ................................................................................15

*Passaic Daily News v. N.L.R.B*
  736 F.2d 1543 (D.C. Cir. 1984) ...........................................................................17

*Pauma Band of Luiseno Mission Indians v. California*,
  813 F.3d 1155 (9th Cir. 2015) ..............................................................................15

*Prager University v. Google LLC*,
  *85 Cal. App. 5th 1022* (2022)...................................................................8, 10, 21

*Real Estate Analytics, LLC v. Vallas*,
  160 Cal. App. 4th 463 (2008) ...............................................................................15

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
  144 F. Supp. 3d 1088 (N.D. Cal. 2015) *aff'd*, 697 F. App'x 526 (9th Cir. 2017) (mem.).......20

*Sindi v. El-Moslimany*,
  896 F.3d 1 (1st Cir. 2018)......................................................................................17

*Solomon v. North American Life & Casualty Insurance Co.*,
  151 F.3d 1132 (9th Cir. 1998) ..............................................................................17

*Song fi Inc. v. Google, Inc.*,
  108 F. Supp. 3d 876 (N.D. Cal. 2015) ..............................................................8, 13

*Spates v. Dameron Hospital Ass'n*,
  114 Cal. App. 4th 208 (2003) ...............................................................................19

*Tawfik v. JPMorgan Chase Bank, N.A.*,
  2020 WL 5074398 (N.D. Cal. 2020) ...................................................................18

*Wright v. Charles Schwab & Co.*,
   No. 20-CV-05281-LB, 2020 WL 6822887 (N.D. Cal. 2020) (Beeler, J.) ..............................18

*Young v. Facebook, Inc.*,
   No. 5:10-CV-03579-JF/PVT, 2010 WL 4269304 (N.D. Cal. 2010) .........................................9

*Yu v. Design Learned, Inc.*,
   No. 15-CV-05345-LB, 2016 WL 1621704 (N.D. Cal. 2016) (Beeler, J.) ................................7

*Zepeda v. PayPal, Inc.*,
   777 F. Supp. 2d 1215 (N.D. Cal. 2011) ................................................................................11

*Zhang v. Baidu.com, Inc.*,
   10 F. Supp. 3d 433 (S.D.N.Y. 2014)....................................................................................16

**Statutes & Codes**

47 U.S.C. §230................................................................................................... *passim*

**Rules**

Fed. R. Civ. Proc. 12(b)(6) ...............................................................................................1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT, on May 18, 2023, at 9:30 a.m. or as soon thereafter as the matter may be heard, in the U.S. District Court for the Northern District of California, this Motion to Dismiss filed by Defendants YouTube, LLC, Google LLC, and Alphabet Inc. will be heard.  Defendants hereby move to dismiss the amended complaint ("complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Motion to Dismiss is based on this Notice and the Memorandum of Points and Authorities.

## STATEMENT OF REQUESTED RELIEF

Defendants request that the Court dismiss the complaint with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs Joseph Mercola and Mercola.com LLC ("Mercola") filed this lawsuit to compel Defendant YouTube, Inc. ("YouTube") to restore Mercola's channel after it was terminated for repeated violations of YouTube's medical misinformation policies.  Mercola is a "high-profile anti-vaccine activist[]." Compl. ¶19 (Dkt. 21).  YouTube terminated the channel for violating its Community Guidelines—specifically, its policies on medical misinformation, which prohibit harmful misinformation about COVID-19 and "currently administered vaccines that are approved and confirmed to be safe and effective by local health authorities and the WHO."  Compl. ¶21.  Mercola claims this exercise of YouTube's First-Amendment-protected editorial judgment somehow breached YouTube's Terms of Service ("Terms") or demonstrated bad faith.  That is wrong.

Mercola asserts contract (Counts I, II, IV), quasi-contract (Count III, V), and tort (Count VI) claims, but all are unavailing for four reasons:

*First*, Mercola's contract claims should be dismissed because the complaint fails to allege breach.  Mercola's contract claims hinge on assertions that YouTube improperly terminated his channel prior to providing a "three strikes" warning (Count II) and advance notice of a

modification to YouTube's policies (Count I).[1]  But none of the provisions that Mercola relies upon, nor his related arguments, can overcome the parties' agreement expressly authorizing YouTube to cease hosting content at any time.  As a matter of law, YouTube cannot breach by engaging in conduct expressly authorized by the parties' agreement.

*Second*, Mercola cannot plead damages—another essential element of a contract claim.  The Agreement's limitation on liability forecloses the monetary relief Mercola seeks, and Mercola cannot plead facts necessary to justify the demand for specific performance forcing YouTube to provide "ongoing use of the platform" (Count IV).

*Third*, Mercola's remaining claims suffer from myriad other defects.  Mercola's breach of implied covenant claim (Count III) fails both because it is duplicative of Mercola's breach of contract allegations and (again) because the parties' Agreement expressly authorizes YouTube to remove content at any time.  Mercola's unjust enrichment claim (Count V) cannot succeed because the complaint does not allege the Agreement is unenforceable or invalid.  Finally, Mercola's conclusory allegations of conversion also warrant dismissal (Count VI) because YouTube's Terms expressly state that "YouTube may retain … videos that have been removed or deleted."

*Fourth*, Section 230 of the Communications Decency Act provides an independent basis for dismissal.  The complaint establishes that YouTube is the provider of an interactive computer service within the meaning of that Act.  And each of Mercola's claims seek to impose liability for, and countermand by judicial order, YouTube's decision to terminate Mercola's channel—a quintessential publishing function that is perforce immune under §230(c)(1).

For these reasons, this Court should dismiss the complaint with prejudice.

## BACKGROUND

### A.    YouTube's Terms, Community Guidelines, And Medical Misinformation Policies

YouTube operates an Internet communications platform that allows users to watch,  share, comment on, and upload videos.  Compl. ¶1.  In order to use YouTube, users agree to the Terms

---

[1] We address the "three strikes" warnings (Count II) first because the strikes began earlier than the alleged failure to provide notice of a policy change.

and YouTube's Community Guidelines (collectively the "Agreement").  Compl. ¶¶7-8.

### i.    YouTube's Discretion To Host Content

YouTube's Terms explain that YouTube is under no obligation to host content and may exercise its discretion in removing harmful content.  Under the provision titled "Content on the Service," the Terms state, "YouTube is under no obligation to host or serve Content."  Lerner Decl. Ex. A.[2]  Under the provision titled "Removal of Content," the Terms state, "[i]f any of your Content (1) is in breach of this Agreement or (2) may cause harm to YouTube, our users, or third parties, we reserve the right to remove or take down some or all of such Content *in our discretion*." Lerner Decl. Ex. A (emphasis added).  With respect to YouTube's right to retain content, the Terms state, "You understand and agree, however, that YouTube *may retain*, but not display, distribute, or perform, server copies of your videos that have been removed or deleted."  Lerner Decl. Ex. A (emphasis added).

### ii.    Limitation On Liability

YouTube's Terms also contain a limitation on liability ("Liability Bar"):

Except as required by applicable law, YouTube, its affiliates, officers, directors, employees and agents will not be responsible for any loss of profits, revenues, business opportunities, goodwill, or anticipated savings; loss or corruption of data; indirect or consequential loss; punitive damages caused by:

1. errors, mistakes, or inaccuracies on the service;
2. personal injury or property damage resulting from your use of the service;
3. any unauthorized access to or use of the service;
4. any interruption or cessation of the service;
5. any viruses or malicious code transmitted to or through the service by any third party;
6. any content whether submitted by a user or YouTube, including your use of content; and/or

---

[2] Mercola's breach of contract claims depend on the Terms, which Mercola quotes extensively throughout the complaint. Compl. ¶¶36-44.  So too, Mercola quotes YouTube's COVID-19 misinformation policy, Compl. ¶¶16, 26, vaccine misinformation policy, Compl. ¶44, the blog post announcing the vaccine misinformation policy, Compl. ¶20, and a Washington Post article describing YouTube's suspension of his account, Compl. ¶¶19-22.  This Court can thus consider these materials pursuant to the incorporation by reference doctrine.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (holding that courts may consider at the pleadings stage documents "'whose contents are alleged in the complaint'" even when they are not attached to the complaint). The Court may also take judicial notice of YouTube's misinformation policies.  *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) ("In a motion to dismiss, we may take judicial notice of matters of public record outside the pleadings.").

7. ***the removal or unavailability of any content***.

This provision applies to any claim, regardless of whether the claim asserted is based on warranty, contract, tort, or any other legal theory.

Compl. ¶51 (emphasis added); Lerner Decl. Ex. A.

### iii.   Community Guidelines

YouTube adopts Community Guidelines, which describe the types of content that are not allowed on YouTube and outline a discretionary enforcement scheme. Compl. ¶¶8, 43.

*YouTube's Misinformation Policies*.  The Community Guidelines prohibit certain types of misinformation, i.e., "types of misleading or deceptive content with serious risk of egregious harm." Lerner Decl. Ex. E.  Medical misinformation is one category of misinformation under the Guidelines.  Lerner Decl. Ex. E.  For example, YouTube has "long removed content that promotes harmful remedies, such as saying drinking turpentine can cure disease," because such claims are a form of medical misinformation.  Lerner Decl. Ex. B.  Another type of medical misinformation YouTube proscribes is "content about COVID-19 that poses a serious risk of egregious harm," including COVID-19 vaccine misinformation.  Lerner Decl. Ex. F.

On September 29, 2021, YouTube elaborated on its existing medical misinformation policies, prohibiting misinformation about "currently administered vaccines that are approved and confirmed to be safe and effective by local health authorities and the WHO." Compl. ¶21.  YouTube announced this vaccine misinformation policy on its website, explaining that it builds on Google's existing efforts to curb medical misinformation by banning "content that falsely alleges that approved vaccines are dangerous."  Lerner Decl. Ex. B.  YouTube implemented the vaccine misinformation policy in part because "incorrect claims about other vaccines were contributing to fears about the coronavirus vaccines."  Lerner Decl. Ex. B.  To enforce the policy, YouTube may "terminate [a user's] channel or account after a single case of severe abuse, or when the channel is dedicated to a policy violation."  Compl. ¶44.

*Discretionary Enforcement System*.  The Community Guidelines outline a discretionary "strikes framework" to enforce YouTube's policies.  The framework states, "If your content violates our Community Guidelines, your channel will get a strike."  Compl. ¶43; Lerner Decl. Ex. D.  If an account receives "3 strikes in the same 90-day period," that "channel [will] be[]

permanently removed from YouTube."  Compl. ¶43.  "[T]he first violation is typically only a warning," and thus, may not result in a strike.  Compl. ¶43.  But the policy states that not all enforcement decisions follow the strikes framework; YouTube reserves discretion: "Sometimes a single case of severe abuse will result in channel termination without warning."  Compl. ¶43.

### B.      YouTube's Removal of Mercola's Content

According to the article Mercola cites in the complaint, Mercola is a "high-profile anti-vaccine activist[]" and "anti-vaccine influencer[]" who has been publishing content on YouTube since 2005.  Compl. ¶¶9, 19; *see also* Lerner Decl. Ex G.  Mercola's content, which repeatedly spread misinformation about approved vaccines, Lerner Decl. Ex. G, had wide reach and influence—gaining over 300,000 subscribers and garnering 50,000,000 or more separate views, Compl. ¶10.  Indeed, a link in the same article Mercola cites shows that the nonprofit Center for Countering Digital Hate identified Mercola as number one of twelve anti-vaccine activists "behind much of the anti-vaccine content shared on social media."  Lerner Decl. Ex. G.  It states that Mercola's content is "partially responsible for helping seed the skepticism that's contributed to slowing vaccination rates across the country."  Lerner Decl. Ex. G.

On September 29, 2021, YouTube terminated Mercola's channel and account.  Compl. ¶¶23-24.  On the same day, YouTube sent Mercola a notice explaining the grounds for its termination.  The notice states, "We have reviewed your content and found severe or repeated violations of our Community Guidelines.  This account has been terminated due to multiple or severe violations of YouTube's policies on Medical Misinformation."  Compl. ¶24.  The notice also contained a link through which Mercola could appeal the decision.  Compl. ¶24.  Mercola lodged an appeal, and YouTube informed Mercola that it "reviewed [his] channel carefully, and ha[s] confirmed that it violates [its] Community Guidelines."  Compl. ¶33.

### C.      Mercola Files The Complaint Based On Termination

Mercola filed the original complaint on September 28, 2022 to challenge YouTube's removal of Mercola's content.  Dkt. 1.  In that complaint, Mercola alleged two breach of contract theories:  first, that YouTube breached the Agreement by failing to provide advance notice of the vaccine misinformation policy before terminating Mercola's channel and account, and second, that

1    YouTube "breached" the three strikes policy by failing to provide Mercola a warning before

2    terminating his channel and account.  Mercola also sought specific performance in the form of a

3    judicial order that provides Mercola with "ongoing use of the platform."  The original complaint

4    alleged that Mercola's loss of access to his videos constitutes unjust enrichment and conversion.

5    After counsel met and conferred regarding the first complaint, Mercola filed an amended

6    complaint on December 16, 2022.  Dkt. 21.  The amended complaint repeats Mercola's contract

7    (¶¶65-84), unjust enrichment (¶¶103-109), and conversion (¶¶110-113) claims.  Mercola also adds

8    a claim for breach of the implied covenant of good faith and fair dealing (¶¶85-92).

9         Despite challenging YouTube's termination of his channel, Mercola does not cite ***any*** of

10   the provisions above that expressly grant YouTube the right ***not*** to host content and the discretion

11   to remove it.  Instead, he points to YouTube's strikes framework and the provision titled

12   "Modifying this Agreement," which states that "YouTube will provide reasonable advance notice

13   of any material modifications to this Agreement and the opportunity to review them."  Compl. ¶38.

14   That provision also notifies users that "[i]f you do not agree to the modified terms, you should

15   remove any Content you have uploaded and discontinue your use of the Service."  Compl. ¶38.

16   Neither that provision nor the strikes framework, however, state that they override or diminish

17   YouTube's rights regarding hosting or removing content.

18        With regard to YouTube's Liability Bar, Mercola merely pleads a legal conclusion that it

19   does not apply or affect the amount in controversy.  Compl. ¶¶53-54.  But Mercola provides ***no***

20   facts supporting that conclusory allegation.

                                **STANDARD OF REVIEW**

22        The complaint cannot survive a motion to dismiss because the factual allegations fail to

23   "plausibly (not merely conceivably) entitle [Mercola] to relief."  *Maya v. Centex Corp.*, 658 F.3d

24   1060, 1067-68 (9th Cir. 2011).  "Threadbare recitals of the elements of a cause of action, supported

25   by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

                                      **ARGUMENT**

27   **I.    The Complaint Fails To Allege Breach Of Contract (Count I, II, IV)**

28        Mercola's contract claims should be dismissed.  To state a breach of contract claim under

California law, a plaintiff must plausibly allege "'1) the existence of a contract; 2) plaintiff's performance or excuse for nonperformance; 3) defendant's breach; and 4) resulting damage.'" *Yu v. Design Learned, Inc.*, No. 15-CV-05345-LB, 2016 WL 1621704, at *6 (N.D. Cal. 2016) (Beeler, J.)). The complaint fails to plausibly allege at least two of these elements. First, Mercola cannot allege breach based on YouTube's termination of Mercola's channel and account because the Agreement makes clear that YouTube is under "no obligation to host or serve [c]ontent." Lerner Decl. Ex. A. Second, Mercola fails to allege damages because the monetary damages he seeks are foreclosed by the Liability Bar and Mercola is not entitled to specific performance.

### A.     Mercola Fails To Plausibly Allege Breach

Mercola's contract claims must be dismissed because he fails to allege breach—an essential element of any contract claim. When the defendant was "given the right to do what [it] did by the express provisions of the contract there can be no breach." *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1159 (N.D. Cal. 2020) (quoting *Carma Dev. (Cal.) Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992)), *aff'd*, 857 F. App's 907 (9th Cir. 2021). That principle forecloses Mercola's contract claims.

Mercola's contract claims fault YouTube for terminating Mercola's channel without providing a warning or "strikes" (Count II), or advance notice of a modification to the Community Guidelines (Count I). The problem with these claims is that the Agreement authorizes YouTube to do exactly that. YouTube expressly disclaims any obligation to continue hosting content in the Agreement: "YouTube is under no obligation to host or serve [c]ontent." Lerner Decl. Ex. A. And the Agreement grants YouTube discretion to remove any content that it "reasonably believe[s] … is in breach of th[e] Agreement or may cause harm … *in [its] discretion*." Lerner Decl. Ex. A (emphasis added). These provisions authorize YouTube to remove content at any time, in its discretion, and no provisions that Mercola cites are to the contrary.

Courts repeatedly have held that express disclaimers of this kind foreclose contract claims by users that challenge a platform's right to cease hosting content or a particular user. In *Daniels v. Alphabet Inc.*, No. 20-CV-04687-VKD, 2021 WL 1222166, at *2 (N.D. Cal. 2021), a court in this district interpreted identical language in YouTube's Terms to foreclose a breach of contract

claim by a user premised on YouTube's removal of his content.  Many other cases reach a similar result.  *See, e.g., Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) (no breach based on YouTube's removal of content when Terms gave YouTube "the right to determine whether 'Content violates these Terms of Service' and, 'at any time, without prior notice and in its sole discretion, remove such Content...'" and to "'discontinue any aspect of the Service at any time'"); *Prager Univ. v. Google LLC*, 85 Cal. App. 5th 1022, 1037 (2022) (rejecting argument that Terms restrict how "defendants choose to moderate content" when those terms "expressly permit[] defendants to 'refuse or limit [users'] access to the Services'"); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 35 (2021) (contract claim based on account suspension "necessarily fails … because Twitter's terms of service expressly state that they reserve the right to 'suspend or terminate [users'] accounts … for any or no reason' without liability"); *see also Lewis v. Google LLC*, 461 F. Supp. 3d 938, 961-962 (N.D. Cal. 2020) (dismissing breach of good faith and fair dealing claim based on YouTube's demonetization of content when the parties' agreement stated that "YouTube is not obligated to display any advertisements alongside your videos"), *aff'd*, 851 F. App'x 723 (9th Cir. 2021); *Enhanced Athlete Inc. v. Google LLC*, 479 F. Supp. 3d 824, 833 (N.D. Cal. 2020) (no breach of implied covenant for removal of content when "the parties' agreements authorized [d]efendants, in their discretion, to remove [p]laintiff's videos and delete its accounts").

Thus, Mercola's claims—which challenge YouTube's right to terminate Mercola's channel —are foreclosed by the Agreement's unqualified disclaimer that YouTube is under "no obligation to host or serve [c]ontent."  Lerner Decl. Ex. A.  Mercola cannot claim breach by seeking to impose an obligation on YouTube that is expressly disclaimed in the Agreement.

Mercola seeks to avoid the Agreement's plain language granting YouTube discretion to handle content and related case law by arguing that the "three strikes" framework obligates YouTube to provide a warning before terminating a user's channel (Count II), and that the Agreement obligates YouTube to provide advance notice of policy changes before removing content (Count I).  But again, this gambit fails.  Neither the Community Guidelines nor the Agreement modify—let alone vitiate—YouTube's right to cease hosting content at any time.

1

### i.      The Community Guidelines Do Not Support A Claim For Breach

2          The Community Guidelines cannot be a basis for Mercola to claim contractual breach

3   (Compl. ¶¶74-84) because they do not place any contractual obligation on YouTube to continue

4   hosting content; they inform users of what content is restricted on YouTube and describe potential

5   enforcement actions YouTube may take.  For example, the "strike basics" page on which Mercola

6   relies merely describes "typical[]" courses of action that YouTube "may" or "will likely" take to

7   address policy violations and explains the consequence of each approach to a user's account.

8   Compl. ¶¶42-43.  The vaccine misinformation policy likewise states that a channel will "likely get

9   a warning" for their first offense, and that YouTube "may" terminate a channel for "repeated

10  violations," "a single case of severe abuse," or "when the channel is dedicated to a policy

11  violation."  Compl. ¶44.  Descriptive language of this kind cannot create a binding contractual

12  obligation on YouTube to take any specific course of action in response to a policy violation.  *See*

13  *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 931 (N.D. Cal. 2012) (finding that descriptions in a

14  "User Guide" regarding a technology's functions and directions on how to use the technology do

15  not amount to contractual obligations).  That is particularly so where, as here, the Agreement

16  expressly authorizes YouTube to remove content that may cause harm "in [its] discretion," and

17  makes clear that YouTube is under "no obligation to host or serve [c]ontent."  Lerner Decl. Ex. A.

18          Mercola's attempt to leverage the three strikes policy runs headlong into a lengthy line of

19  cases holding that rules regarding permissible content and enforcement guidelines do not create an

20  obligation for platforms to host or remove content.  *See, e.g., Morton v. Twitter, Inc.*, No. CV 20-

21  10434-GW-JEMx, 2021 WL 1181753, at *5 (C.D. Cal. Feb. 19, 2021) (describing Twitter's

22  content moderation policies, including its "Non-consensual nudity policy" as "merely aspirational

23  statements" that do not create binding contractual obligations); *Caraccioli v. Facebook, Inc.*, 167

24  F. Supp. 3d 1056, 1064 (N.D. Cal. 2016) (Facebook's Terms of Service "place restrictions on

25  users' behavior," they "do not create affirmative obligations" on Facebook), *aff'd*, 700 F. App'x

26  588 (9th Cir. 2017); *Young v. Facebook, Inc.*, No. 5:10-CV-03579-JF/PVT, 2010 WL 4269304, at

27  *3 (N.D. Cal. 2010) (dismissing contract claim based on Facebook's alleged failure to enforce its

28  policies against posting content that is "hateful" because those policies "place restrictions on users'

behavior, [but] they do not create affirmative obligations" on Facebook).  The complaint offers no reason to depart from this well-settled consensus among courts.

The California Court of Appeal's decision in *Prager University v. Google LLC*, 85 Cal. App. 5th 1022 (2022) is instructive.  There, in an attempt to evade Section 230 immunity, a YouTube user alleged that YouTube was bound by a "contractual promise to filter content neutrally" because its Community Guidelines "giv[e] the impression that it voluntarily filters the content on its platform using a discrete set of neutral policies." *Id.* at 1037-1038.  The court rejected that argument, explaining that although the Community Guidelines "warn that defendants may remove YouTube videos that run afoul of its standards as to nudity or sexual content, harmful or dangerous content, and hateful content," they "in no way purport to bind defendants to publish any given video, or to remove a video only for violation of those guidelines." *Id.* at 1038.  And, at bottom, the Community Guidelines cannot "limit [YouTube's] express reservation of rights." *Id.* So too here.  The three strikes and vaccine misinformation policy merely describe enforcement approaches YouTube may take; they cannot vitiate YouTube's express disclaimer that it is under no obligation to host or serve content.

Mercola's reliance on the three strikes or vaccine misinformation policy suffers from yet another flaw: he has not shown that YouTube's conduct contradicted either policy.  As to YouTube's alleged failure to provide warnings prior to termination, both policies expressly authorize YouTube to terminate a user's account without warnings or successive strikes for "severe abuse."  The three strikes policy states: "Sometimes a single case of severe abuse will result in channel termination without warning."  Compl. ¶43 (emphasis added).  Likewise, the vaccine misinformation policy includes the caveat that YouTube "may also terminate your channel or account after a single case of severe abuse."  Compl. ¶44.  And, as the complaint concedes, YouTube terminated Mercola's channel and account after finding "severe or repeated violations" of "YouTube's policies on Medical Misinformation."  Compl. ¶25.  The complaint offers no explanation for why application of the "severe abuse" exception would amount to breach.  Further, the complaint fails to address an additional basis for immediate termination under the vaccine misinformation policy for channels that are "dedicat[ed] to a policy violation."  Lerner Decl. Ex.

C.  This failure alone defeats Mercola's claim—particularly when Mercola is "behind much of the anti-vaccine content shared on social media."  Lerner Decl. Ex. G; *see Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1220 (N.D. Cal. 2011) (holding that when the plaintiff failed to address the effect of two contractual provisions, which allow PayPal to take the action plaintiff challenged, the pleading "fail[ed] to give rise to the reasonable inference that PayPal is liable for breach of contract").  Because YouTube was "given the right to do what [it] did by the express provisions of the contract, there can be no breach."  *Mishiyev*, 444 F. Supp. 3d at 1159 (citation omitted).

Mercola's sole allegation to the contrary is unavailing.  The complaint contains a single conclusory statement that "Mercola has never committed any 'severe abuse' … nor violated any published Community Guideline in effect under the terms of the Agreement."  Compl. ¶81.  But such threadbare assertions fall far short of the federal pleading standard.  *See Iqbal*, 556 U.S. at 678 ("[W]e 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").  Furthermore, nothing in the Guidelines nor the Terms enables Mercola to usurp YouTube's discretion.  The Terms leave determinations as to whether content violates the Community Guidelines to YouTube's discretion.  Lerner Decl. Ex. A.  ("If any of your Content (1) is in breach of this Agreement or (2) may cause harm … we reserve the right to remove … such Content in our discretion.").  YouTube was exercising that discretion when it terminated Mercola's channel for violating YouTube's policies on medical misinformation.  Mercola cannot claim breach because he disagrees with YouTube's determination.

Mercola's claim that YouTube breached by "fail[ing] to inform Mercola of what removed content violated which policies, and why additional content was removed" is similarly flawed.  Compl. ¶83.  Nothing in the parties' Agreement obligates YouTube to provide such an explanation.  The three strikes policy states that users who receive a strike will be sent an email explaining "[w]hat content was removed" and "[w]hich policies it violated."  Compl. ¶43.  But Mercola avoids pleading that he did or did not receive a strike; instead, he simply claims his channel was immediately terminated.  Compl. ¶105.  And nothing in the Agreement obligates YouTube to notify users "what removed content violated which policies, and why additional content was removed" when a channel is terminated (nor would such a requirement make sense given the

volume of content).  Rather, YouTube's Terms state that if an account is terminated, YouTube will "notify you with the reason for termination or suspension."  Lerner Decl. Ex. A.  YouTube did just that here.  Immediately after the channel was terminated on September 21, 2021, Mercola received an email from YouTube stating that "[t]his account has been terminated due to multiple or severe violations of YouTube's policies on Medical Misinformation."  Compl. ¶24.  There can be no breach when YouTube has fulfilled its alleged obligations under the Agreement.  *See Doe v. Google LLC*, No. 20-CV-07502-BLF, 2020 WL 6460548, at *5 (N.D. Cal. 2020) (no likelihood of success on merits of breach of contract claim when plaintiff's allegations that YouTube breached its obligation to provide an explanation after an account's suspension were "belie[d]" by plaintiff's own declarations "that YouTube referenced its harassment and cyberbullying policy in its email notices"); *see also Daniels*, 2021 WL 1222166, at *8.[3]  And in any event, nothing in the three strikes policy can vitiate YouTube's right, as set forth in the Terms, to cease hosting content at any time.  *See supra* pp. 7-8.

### ii. The "Modifying this Agreement" Provision Does Not Support Mercola's Claim For Breach

Equally unavailing is Mercola's argument that YouTube breached the Agreement by failing to provide "advance notice" of a change in its Community Guidelines before terminating Mercola's channel and account (Count I).  Compl. ¶¶70-73.  The Agreement states: "YouTube will provide reasonable advance notice of any material modifications to this Agreement and the opportunity to review them.… If you do not agree to the modified terms, you should remove any Content you have uploaded and discontinue your use of the Service."  Compl. ¶38.  Again, nothing in that provision lessens YouTube's discretion to cease hosting or serving content at any time because the Agreement contains an unqualified disclaimer that "YouTube is under no obligation to host or serve [c]ontent" and grants YouTube the right to remove content for reasons other than

---

[3] In passing, the complaint alleges that Mercola was notified of the removal of a video "[a] handful of times over 16 years," and that no "warnings" or "information as to why content was removed" accompanied these notifications.  Compl. ¶14.  This allegation is much too vague to support a claim for breach.  And any such claim would be barred by the statute of limitations in the Agreement.  *See* Lerner Decl. Ex. A.  ("[A]ny cause of action arising out of or related to the services must commence within one (1) year after the cause of action accrues.").

1    violations of the Agreement—including when content "may cause harm."  Lerner Decl. Ex. A.

2    Mercola cannot impose on YouTube obligations that it expressly disclaimed in the Agreement.

3        *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12 (2021) is directly on point.  There, a Twitter

4    user alleged that Twitter violated its Terms of Service by suspending her account for violations of

5    its Hateful Conduct policy without providing prior notice of changes to that policy.  Murphy based

6    her claim for breach on a provision in Twitter's Terms of Service that promised users would be

7    notified "30 days in advance of making effective changes" to the Terms of Service.  *Id.* at 22.  The

8    Court of Appeal rejected that argument, explaining that Murphy's contract claim fails because

9    Twitter's Terms of Service grant Twitter the right to "suspend or terminate users' accounts … for

10   any or no reason."  *Id.* at 35 (internal alterations omitted).  Despite the notice provision, the court

11   concluded that the "clear terms of Twitter's user agreement"—which reserved Twitter's right to

12   remove content—"preclude[d] a claim for breach of contract" based on content removal.  *Id.*

13   Likewise, the Agreement, which reserves YouTube's right to cease hosting content at any time,

14   precludes Mercola's attempt to claim breach based on YouTube's termination decision.  *See also*

15   *Song fi*, 108 F. Supp. 3d at 884-885 (no breach when YouTube's Terms authorized it to "remove

16   videos in its sole discretion").

17       Mercola's claim that YouTube breached the "Modifying this Agreement" provision fails

18   for yet another reason: he has not plausibly alleged that YouTube was obligated to provide advance

19   notice of the vaccine misinformation policy.  The vaccine misinformation policy is an explication

20   of YouTube's longstanding policies prohibiting medical misinformation.  As YouTube explained

21   in announcing the vaccine misinformation policy, its Community Guidelines "already prohibit

22   certain types of medical misinformation," and YouTube has "long removed content that promotes

23   harmful remedies, such as saying drinking turpentine can cure disease," as well as misinformation

24   about COVID-19 vaccines.  Lerner Decl. Ex. B.  The vaccine misinformation policy is another

25   application of these longstanding prohibitions on posting medical misinformation.  This kind of

26   explication cannot amount to a "material modification" for which advance notice is required.  And

27   it certainly cannot create an obligation on YouTube to continue hosting Mercola's content when

28   the express terms of the Agreement disclaim any such obligation.

1

### B.      Mercola Fails To Plausibly Allege Damages

2      Mercola's failure to demonstrate that he is entitled to any remedy for his breach of contract

3   claims provides an additional basis to dismiss Counts I-II, IV.  The Liability Bar prevents Mercola

4   from recovering any monetary damages on either claim, and equitable relief in the form of specific

5   performance is likewise unjustified.  Courts routinely dismiss at the pleadings stage breach of

6   contract claims against YouTube for failure to allege damages when the plaintiffs' claims fall

7   within the scope of the Liability Bar, and specific performance is inappropriate.  *See Darnaa, LLC*

8   *v. Google, Inc.*, No. 15-CV-03221-RMW, 2015 WL 7753406 (N.D. Cal. 2015) (applying

9   YouTube's Liability Bar to dismiss plaintiff's breach of contract claim); *Lewis v. YouTube, LLC*,

10   244 Cal. App. 4th 118, 124 (2015) (sustaining demurrer when Liability Bar barred monetary relief

11   and specific performance was inappropriate).

12            ### i.      The Liability Bar Forecloses Monetary Relief

13      The Liability Bar precludes Mercola from recovering the damages he requests for alleged

14   breach:  damages arising from Mercola's loss of access to his videos.  The Liability Bar states,

15   "YouTube … will not be responsible for any loss of profits, revenues, business opportunities …

16   [or] loss or corruption of data … caused by" a variety of possibilities, including "any interruption

17   or cessation of the service" and "the removal or unavailability of any content."  Lerner Decl. Ex.

18   A.  This provision "applies to any claim, regardless of whether the claim asserted is based on …

19   contract … or any other legal theory."  *Id.*  In Count I, Mercola alleges damages arising from loss

20   of "access to its account, including any opportunity to access the content it housed on the

21   platform."  Compl. ¶72.  Likewise, in Count II, Mercola alleges damages from loss of "access to

22   its account and content without any warning."  Compl. ¶82.  The Liability Bar encompasses each

23   claim, as both challenge Mercola's "loss … of data" from "the removal or unavailability of any

24   content."  Lerner Decl. Ex. A; *Lewis,* 244 Cal. App. 4th at 125-126 (YouTube's Liability Bar

25   precludes user's contract claim for "deletion of her content without prior notice").

26      Mercola attempts to evade the Liability Bar by alleging that it "does not apply to an action

27

28

1    for YouTube's breach of its contract with Mercola."[4]   Compl. ¶53.   That conclusory argument is

2    frivolous.   The Liability Bar states that it "applies to any claim, regardless of whether the claim

3    asserted is based on … *contract* … or any other legal theory."   Lerner Decl. Ex. A (emphasis

4    added); *see Lewis*, 244 Cal. App. 4th at 125-126 (rejecting argument that contract claim based on

5    "deletion of … content without prior notice" falls outside scope of YouTube's Liability Bar).

###     ii.     Mercola Is Not Entitled To Specific Performance (Count IV)

7           Mercola is not entitled to any equitable relief in the form of specific performance of the

8    contract either.   Mercola seeks sweeping relief, including "ongoing use of the platform, its channel,

9    and its account" and "opportunity to review changes to the Agreement, and during that time, to

10   remove any content from the platform."   Compl. ¶102.   But specific performance is an

11   extraordinary remedy, and Mercola has not come close to alleging that he is entitled to it.   The

12   availability of specific performance requires, among other things, that "there is substantial

13   similarity of the requested performance to the contractual terms" and the contract's "terms are

14   sufficiently definite." *Lewis,* 244 Cal. App. 4th at 125.   Mercola fails to satisfy either condition.

15          First, none of the relief Mercola seeks approximates the performance "promised in the

16   contract." *See Real Estate Analytics, LLC v. Vallas*, 160 Cal. App. 4th 463, 472 (2008).   "[O]ne

17   cannot specifically perform something that is not a term in the contract." *Pauma Band of Luiseno*

18   *Mission Indians v. California*, 813 F.3d 1155, 1167 (9th Cir. 2015).   Nothing in the Agreement

19   obligates YouTube to grant Mercola "ongoing use of the platform, its channel, and its account."

20   Compl. ¶102.   To the contrary, the Agreement makes clear that "YouTube is under no obligation

21   to host or serve [c]ontent." Lerner Decl. Ex. A.   Neither does the Agreement obligate YouTube to

22   reinstate Mercola's account merely to provide Mercola with the opportunity to remove his content

23   from the platform.   Compl. ¶40.   That is because "nothing in the Terms of Service even suggest[s]

24   that YouTube is a storage site for users' content." *Lewis*, 244 Cal. App. 4th at 127.   The Agreement

25

26   ───────────────
     [4] Mercola also claims that the Liability Bar does not affect the "amount in controversy"
27   requirement for asserting diversity jurisdiction. Compl. ¶54. That is plainly wrong. Courts refuse
     to exercise diversity jurisdiction when a liability cap in the parties' contract would "make it
     virtually impossible for a plaintiff to meet the amount-in-controversy requirement." *Pachinger v.*
28   *MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986).

provides users an opportunity to "remove any Content [they] have uploaded and discontinue [their] use of the Service" if they do not agree with any modified terms.  Lerner Decl. Ex. A.  Mercola cannot demand that YouTube specifically perform what are mere guidelines to users.  *See Donohue*, 871 F. Supp. 2d at 931.

Second, the terms on which Mercola bases his specific performance claim are not "sufficiently definite to 'make the precise act which is to be done clearly ascertainable.'" *California Physicians Serv., Inc. v. Healthplan Servs., Inc.*, No. 3:18-CV-03730-JD, 2021 WL 879797, at *4 (N.D. Cal. 2021).  Mercola seeks "ongoing use of the platform, its channel, and its account," but the Agreement provides no guidance as to whether such a reinstatement would be full or partial, how long it should last, whether it would somehow bar YouTube from enforcing its guidelines against Mercola going forward, and other crucial details this Court would need to formulate any specific performance remedy.

Finally, specific performance is uniquely inappropriate because a judicial order forcing YouTube to provide Mercola "ongoing use" of the platform would violate YouTube's First Amendment rights.  YouTube has a First Amendment right to "exercise … editorial control and judgment" over content it disseminates on its communications platform.  *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 257-258 (1974); *see also NetChoice, LLC v. Att'y Gen., Fla*., 34 F.4th 1196, 1210 (11th Cir. 2022) ("Social-media platforms like … YouTube … are private companies with First Amendment rights, and when they (like other entities) disclose, publish, or disseminate information, they engage in speech within the meaning of the First Amendment."); *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186–1187 (N.D. Cal. 2022) (social media platforms' "decisions about what content to include [and] exclude … are protected by the First Amendment"); *Isaac v. Twitter, Inc*., 557 F. Supp. 3d 1251, 1261 (S.D. Fla. 2021); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017); *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 443 (S.D.N.Y. 2014).  A judicial order forcing YouTube to host Mercola's video would "alter the content of [YouTube's] speech" by compelling YouTube "to speak a particular message," *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018)—namely, that YouTube condones spreading vaccine misinformation, *see O'Handley*, 579 F. Supp. 3d at 1187-1188 (by

removing Tweets, Twitter "'expressed its view that [plaintiff's] particular tweets were not appropriate for sharing on its platform'"). The Supreme Court has made clear that this kind of compelled speech is a content-based restriction that is "presumptively unconstitutional." *Becerra*, 138 S. Ct. at 2371. It may only be justified when it is "'narrowly tailored to serve compelling state interests.'" *Id.*; *Sindi v. El-Moslimany*, 896 F.3d 1, 28 (1st Cir. 2018) (permanent injunction imposing prior restraint subject to strict scrutiny). The complaint does not identify any compelling interest that would justify the sweeping speech restriction Mercola seeks. Nor would a judicial order compelling YouTube to host Mercola's content in perpetuity and without qualification, *see* Compl ¶102, satisfy the narrow tailoring requirement. This Court should steer clear of any remedy that would infringe on YouTube's First Amendment rights. *See Passaic Daily News v. N.L.R.B.*, 736 F.2d 1543, 1558 (D.C. Cir. 1984) (refusing to enforce agency order mandating the resumption of newspaper column because "[i]mplementation of a remedy that requires governmental coercion gives rise to a confrontation with the First Amendment").

## II. The Complaint Fails To Allege Breach Of the Implied Covenant of Good Faith and Fair Dealing (Count III)

To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must show "that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted … by a conscious and deliberate act." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990). An implied covenant claim "cannot substantively alter [the contract's] terms." *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 327 (2000). Accordingly, "a party cannot be held liable on a bad faith claim for doing what is expressly permitted in the agreement." *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1137 (9th Cir. 1998). "[W]here breach of an actual term is alleged, a separate implied covenant claim, based on the same breach, is superfluous." *Guz*, 24 Cal. 4th at 327. Mercola's implied covenant claim fails because it is duplicative of his contract claims and because YouTube's termination of Mercola's channel was expressly authorized by the Agreement.

First, this Court should dismiss Mercola's breach of implied covenant claim because it is

duplicative of his breach of contract claims.  Mercola alleges that YouTube acted in bad faith by failing to provide notice prior to modifying its Guidelines, terminating Mercola's channel, and failing to provide an adequate explanation for termination.  Compl. ¶90.  Yet these allegations—taken verbatim from allegations supporting his contract claims—are precisely the bases on which Mercola alleges breach. Compl. ¶¶71-72, 83.  Both the contract and implied covenant claims also seek the same relief:  damages and ongoing use of the platform.  Compl. ¶¶114-117.  Mercola's duplicative implied covenant claim thus fails.  *See Daniels*, 2021 WL 1222166, at *9.

Second, Mercola's implied covenant claim fails because YouTube's actions were expressly permitted by its Terms.  As discussed above, *supra* pp. 7-8, YouTube's immediate termination of Mercola's channel was expressly authorized by the Agreement.  Mercola's implied covenant claim fails on this basis too.  *See Lewis v. Google LLC*, 851 F. App'x 723, 725 (9th Cir. 2021) ("YouTube's removal or demonetization of [plaintiff]'s videos, when YouTube determined them to violate the Guidelines, cannot support a claim for breach of the implied covenant"); *Ebeid v. Facebook, Inc.*, No. 18-cv-07030-PJH, 2019 WL 2059662, at *8 (N.D. Cal. 2019).

Finally, as discussed, *supra* pp. 14-15, Mercola is barred from recovering damages on his implied covenant claim.  *See Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 677 (9th Cir. 2018).

### III.    The Complaint Does Not Allege Unjust Enrichment (Count IV)

Mercola's unjust enrichment claim fails as a matter of law because "the parties have a contract, and there thus cannot be a separate claim for unjust enrichment."  *Wright v. Charles Schwab & Co.*, No. 20-CV-05281-LB, 2020 WL 6822887, at *4 (N.D. Cal. 2020) (Beeler, J.).  "As a matter of law, the existence of the parties' valid contract—its disputed interpretation notwithstanding—precludes [p]laintiffs from bringing an unjust enrichment claim."  *Tawfik v. JPMorgan Chase Bank, N.A.*, 2020 WL 5074398, at *8 (N.D. Cal. 2020).

Mercola concedes that he "was a party to a contract with YouTube"; indeed, the viability of his contract claims turns on the existence of a valid contract.  Compl. ¶¶66-67.  The complaint does not allege any facts that the Agreement is unenforceable.  To the contrary, Mercola concedes that "YouTube entered into a valid and binding contract with users, including Mercola," and "[t]he Agreement as a whole … is free from fraud and overreaching."  Compl. ¶¶94, 97.  This alone

1    dooms Mercola's unjust enrichment claim.  *See Daniels*, 2021 WL 1222166, at *10.

2    **IV.    The Complaint Fails To Allege A Conversion Claim (Count V)**

3          "The elements of a conversion are the plaintiff's ownership or right to possession of the

4    property at the time of the conversion; the defendant's conversion by a wrongful act or disposition

5    of property rights; and damages." *Spates v. Dameron Hosp. Ass'n*, 114 Cal. App. 4th 208, 221

6    (2003).  Mercola cannot meet this standard.

7          The complaint fails to plead that YouTube committed a "wrongful act" because, as

8    discussed, *supra* pp. 7-8, YouTube was under no obligation to continue to provide Mercola access

9    to his content.  *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 792 (N.D. Cal. 2021) (dismissing

10   conversion claim for removal of photos because Facebook had no retention obligation).  Indeed,

11   Mercola expressly consented to YouTube's retention of the deleted videos.  Mercola acknowledges

12   that he assented to YouTube's "valid and binding" Terms, Compl. ¶94, which provide that

13   "YouTube may retain … videos that have been removed or deleted."  Lerner Decl. Ex. A.

14   Mercola's consent therefore negates any claim of wrongful conversion.  *See Bank of N.Y. v.*

15   *Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008) ("A plaintiff in a conversion action must

16   also prove that it did not consent to the defendant's exercise of dominion.").

17   **V.    Mercola's Claims Are Barred By Section 230**

18         In addition to failing as a matter of law, Mercola's claims are barred by Section 230(c) of

19   the Communications Decency Act, 47 U.S.C. §230.  As the Ninth Circuit has repeatedly

20   recognized, Congress enacted Section 230 "to encourage voluntary monitoring" of objectionable

21   material, *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003), by

22   "immuniz[ing] a webhost who exercises a publisher's 'traditional editorial functions—such as

23   deciding whether to publish, withdraw, postpone, or alter content.'" *Fair Hous. Council of San*

24   *Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170, 1184 (9th Cir. 2008) (en banc)

25   (explaining that Congress enacted Section 230 to "immunize" online platforms' decisions of

26   "whether or not to prevent [a given posting]").  Courts in this Circuit thus routinely hold that

27   Section 230(c)(1) bars the kind of claims at issue here: claims that seek to impose liability for, or

28   countermand by judicial order, a service provider's "decision to block access to—or, in other

words, to refuse to publish—"user content.  *See, e.g., Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094-1095 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. 2017) (mem.); *Lewis*, 461 F. Supp. 3d at 952; *Ebeid*, 2019 WL 2059662, at *5.

Section 230 bars a claim when three elements are met: "(1) Defendant is a provider or user of an interactive computer service; (2) the information for which [p]laintiffs seeks to hold [d]efendant liable is information provided by another information content provider; and (3) [p]laintiffs' claim seeks to hold [d]efendant liable as the publisher or speaker of that information." *Sikhs for Justice*, 144 F. Supp. 3d at 1092-1093 (quotation marks omitted); *accord Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009), *as amended* (Sept. 28, 2009).  Each of these conditions is satisfied as to Mercola's claims.

First, YouTube is an "interactive computer service[]."  *See Daniels*, 2021 WL 1222166, at *12.  Second, the content at issue is videos Mercola posted that led YouTube to enforce its Guidelines to terminate his channel.  Mercola's claims thus concern content "provided by another information content provider."  *Id.*  Finally, Mercola's claims seek to hold YouTube liable as the publisher of Mercola's content.  To prevent plaintiffs from skirting Section 230, courts have emphasized that "what matters is not the name of the cause of action."  *Barnes*, 570 F.3d at 1101-1102.  What matters is whether the cause of action seeks to impose liability for "publishing conduct"—such as "deciding whether to publish or to withdraw from publication third-party content."  *Id.* at 1101-1103.  As each of Mercola's claims challenge YouTube's decision to terminate his channel, and that decision involved "deciding whether to exclude material that third parties seek to post online," it "is perforce immune under section 230."  *Id.* at 1170-1171.

Although the Ninth Circuit declined to apply Section 230 to a promissory estoppel claim in *Barnes*, that case is easily distinguishable.  *Barnes* did not involve a challenge to an Internet platform's general policies for content moderation.  *See id.* at 1108-1109 (holding that a platform's failure to abide by its "general monitoring policy … does not suffice for contract liability").  Rather, it involved a one-off, express promise made by a platform executive directly to the plaintiff that they would take down certain content.  *See id.*; *see also Murphy*, 60 Cal. App. 5th at 28 ("Yahoo's director of communications called Barnes and told her she would 'personally walk the

1   statements over to the division responsible for stopping unauthorized profiles and they would take

2   care of it.'" (quoting *Barnes*, 570 F.3d at 1098-1099)).  That is a far cry from the general statements

3   of intent about moderation approach for an entire website—YouTube's three strikes policy and its

4   policies on medical misinformation—that Mercola takes issue with here.  *See Goddard v. Google,*

5   *Inc.*, 640 F. Supp. 2d 1193, 1201 & n.6 (N.D. Cal. 2009) (distinguishing *Barnes* because it involved

6   a "clear[]" and "direct" promise by a Yahoo! executive to Barnes and holding that Section

7   230(c)(1) barred contract claim that alleged breach of Google's general "Content Policy").

8        Indeed, Mercola's breach of contract claims are precisely the kind the California Court of

9   Appeal dismissed in *Murphy*.  There, the court held that none of Murphy's contract claims—which

10  challenged Twitter's failure to provide thirty-day notice of a policy change before terminating her

11  account—could pierce Twitter's Section 230(c)(l) immunity because her claims "amount[ed] to

12  attacks on Twitter's interpretation and enforcement of its own general [content moderation]

13  policies." 60 Cal. App. 5th at 29-30.  *Murphy* distinguished *Barnes* on the basis that the plaintiff

14  in that case had alleged a "specific representation of fact or promise by [the platform operator] to

15  [the plaintiff] that it would not remove her [content] or suspend her account."  *Id.* at 32.  As in

16  *Murphy*, the complaint does not allege that YouTube made direct and particularized assurances to

17  Mercola.  Section 230(c)(1) thus bars Mercola's claims because "the gravamen of [his] complaint

18  seeks to hold [YouTube] liable, not for specific factual representations it made, but for enforcing

19  its [generally applicable policies] against [him] and exercising its editorial discretion to remove

20  content [he] had posted on its platform." *Id.* at 30.  *See also Prager*, 85 Cal. App. 5th at 1037

21  (interpreting *Barnes* and *Murphy* and holding that Section 230 barred a user's claim that YouTube

22  breached the parties' contract by failing to engage in "identity neutral content moderation" when

23  YouTube expressly disclaimed any such obligation in the Terms).

24       Although some courts in this district have declined to apply Section 230 to contract claims

25  after *Barnes*, those cases are unpersuasive.  A few courts have held that Section 230 does not apply

26  to any contract claim.  *See, e.g.*, *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d

27  1017, 1034 (N.D. Cal. 2021); *Enhanced Athlete*, 479 F. Supp. 3d at 830.  But those decisions

28  wrongfully elide the distinction, as recognized in *Murphy*, 60 Cal. App. 5th at 30, between specific

and direct one-off promises at issue in *Barnes* and promises plaintiffs seek to manufacture from general content moderation policies. Mercola's contract claims challenge YouTube's application of its Community Guidelines, and thus, are not foreclosed from receiving Section 230 immunity after *Barnes*. A few other courts have refused to apply Section 230 to contract claims based on a platform's failure to provide adequate explanation for a termination decision. *See, e.g., Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857 (N.D. Cal. 2022). These decisions are likewise unpersuasive because they allow plaintiffs to circumvent Section 230 immunity by artfully repleading claims that challenge content removal as those that challenge a failure to provide an explanation or notice. That is precisely what Mercola attempts to do here: Mercola's contract claims challenge YouTube's termination of his channel and account; indeed, the relief he seeks is "ongoing use of the platform." Compl. ¶102. He cannot evade Section 230 immunity merely by restyling claims that—at their core—seek to reverse his termination as an alleged failure to provide notice, or an adequate explanation.

\* \* \*

Mercola's complaint should be dismissed with prejudice because any further amendment would be futile. *Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 725-726 (9th Cir. 2000). Additional allegations would not save Mercola's breach of contract, implied covenant, and unjust enrichment claims based on content removal when YouTube disclaims any obligation to host content in the Agreement. So too Mercola's conversion claim: there can be no conversion when the Agreement authorizes YouTube to retain Mercola's content. Because no amendment would allow Mercola to avoid the plain terms of the Agreement, the complaint should be dismissed with prejudice.

## CONCLUSION

For the reasons stated, the Court should dismiss the complaint with prejudice.

Dated: February 10, 2023

/s/  *Joshua H. Lerner*
JOSHUA H. LERNER
CA Bar No. 220755
joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP

One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1124

ARI HOLTZBLATT (*pro hac vice
pending*)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, D.C. 20037
Telephone: (202) 663-6000

***Attorneys for Defendants
YouTube, LLC, Google LLC, and
Alphabet Inc.***

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2023, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

Dated:    February 10, 2023                    By:    /s/ *Joshua H. Lerner*
                                                               JOSHUA H. LERNER