1   P. Renée Wicklund (SBN 200588)
    **RICHMAN LAW & POLICY**
2   535 Mission St.
3   San Francisco, CA 94105
    Tel: 917-327-3554
4   Email: rwicklund@richmanlawpolicy.com

5   John W. Howard  (SBN 80200)
    Michelle D. Volk (SBN 217151)
6   Alyssa P. Malchiodi (SBN 282774)
    **JW HOWARD/ATTORNEYS, LTD.**
7   600 West Broadway, Ste. 1400
8   San Diego, CA 92101
    Tel: 619-234-2842
9   Email: Johnh@jwhowardattorneys.com
            michelle@jwhowardattorneys.com
10          alyssa@jwhowardattorneys.com

11  *Attorneys for Plaintiffs*

12

13

14              **UNITED STATES DISTRICT COURT**

15              **NORTHERN DISTRICT OF CALIFORNIA**

16

17  MERCOLA.COM, LLC and Dr. JOSEPH      ) Case No.: 3:22-cv-05567-LB
    MERCOLA,                             )
18                                       ) **PLAINTIFFS' MEMORANDUM**
                                         ) **OF LAW IN OPPOSITION**
19                      Plaintiffs,      ) **TO DEFENDANTS'**
                                         ) **MOTION TO DISMISS**
20      vs.                              )
                                         )
21                                       ) Hearing Date: May 18, 2023
                                         ) Courtroom: Courtroom B
22  GOOGLE LLC,  YOUTUBE, LLC, ALPHABET  ) Time: 9:30 a.m.
    INC., and DOES 1-10,                 ) Judge: Hon. Laurel Beeler
23                                       )
                                         )
24                      Defendants.      )
                                         )
25  _____  )

26  ///

27  ///

28  ///

1

## **TABLE OF CONTENTS**

2 **INTRODUCTION**........................................................................................................... 1

3 **BACKGROUND** ............................................................................................................... 3

4 **ARGUMENT** ..................................................................................................................... 4

5 **I.**      The First Amended Complaint ("FAC") Properly Alleges Breach of Contract Based on

6 Material Modification of Agreement Without Notice (Count I). ......................................... 4

7     A.   The "Removal of Content" Provision Does Not Preclude Mercola's Action..................... 5

8        1.   YouTube Intentionally Misconstrues Mercola's Pleading. ............................. 6

9        2.   YouTube's Reliance on "Removal of Content" Would Have Nonsensical Results. ....... 8

10        3.   Even if the "Removal of Content" Provision Could Override Other Provisions, It Would

11        Not Reach as Far as YouTube Claims. ............................................................ 9

12     B.   The "Limitation on Liability" Provision Does Not Preclude Mercola's Action. ................ 9

13     C.   Even if the Limitation on Liability Did Apply to Mercola's Action (It Does Not), It Would

14     Provide No Ground to Dismiss the Action. ............................................................ 12

15 **II.**     The First Amended Complaint Properly Alleges Breach of Contract Based on Violation of

16 the "Three-Strike" Warning Policy (Count II). ............................................................. 13

17 **III.**    The First Amended Complaint Properly Alleges a Claim for Breach of Implied Covenant

18 of Good Faith and Fair Dealing.......................................................................... 14

19 **IV.**     The First Amended Complaint Properly Alleges a Claim for Specific Performance...........

20 ............................................................................................................ 17

21 **V.**      The First Amended Complaint Properly Alleges a Claim for Unjust Enrichment. ........... 19

22 **VI.**     The First Amended Complaint Properly Alleges a Claim for Conversion....................... 20

23 **VII.**    Communications Decency Act Section 230 Is Inapplicable to This Action..................... 22

24 **CONCLUSION** ................................................................................................. 24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009)................................................................. 22, 23

*Barrett v Rosenthal*, 40 Cal 4th 33 (2006) ...................................................................................... 22

*Bayol v. Zipcar, Inc.*, No. 14-cv-02483-TEH,

    2015 U.S. Dist. LEXIS 109027 (N.D. Cal. Aug. 18, 2015) ....................................................... 12

*Blackburn v. Charnley*, 117 Cal. App. 4th 758 (2004) .................................................................... 17

*Cal. Phys. Serv., Inc. v. Healthplan Servs., Inc.*, No. 3:18-CV-03730-JD,

    2021 U.S. Dist. LEXIS 44170 (N.D. Cal. Mar. 9, 2021) ........................................................... 18

*Calinawan v. Ocwen Fin. Corp.*, No. C 13-0562 RS,

    2013 U.S. Dist. LEXIS 86408 (N.D. Cal. June 19, 2013) .......................................................... 12

*Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003)................................................ 22

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987)........................................................................... 7

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445 (1998)..... 8

*Daniels v. Alphabet Inc.*, No. 20-cv-04687-VKD,

    2021 U.S. Dist. LEXIS 64385 (N.D. Cal. Mar. 31, 2021) .......................................................... 16

*Darnaa, LLC v. Google LLC*, 756 F. App'x 674 (9th Cir. 2018)................................................. 16, 17

*Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913 (N.D. Cal. 2012) (Whyte, J.) .............................. 19, 20

*Ebeid v. Facebook, Inc.*, No. 18-cv-07030-PJH, 2019 U.S. Dist. LEXIS 78876 (N.D. Cal. 2019) .. 23

*Enhanced Athlete Inc. v. Google LLC*, 479 F. Supp. 3d 824 (N.D. Cal. 2020) (Gilliam, Jr., J.)......... 8

*Gabana Gulf Distrib., Ltd. v. Gap Int'l Sales, Inc.*, No. C 06-02584 CRB,

    2008 U.S. Dist. LEXIS 1658 (N.D. Cal. Jan. 9, 2008) .............................................................. 14

*Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193 (N.D. Cal. 2009) (Fogel, J.).................................. 23

*Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317 (2000)............................................................................ 16

*Hassell v. Bird*, 5 Cal. 5th 522 (2018) ........................................................................................... 22

*J.E.L. v. S.F. Unified Sch. Dist.*, 185 F. Supp. 3d 1196 (N.D. Cal. 2016) (Donato, J.) ...................... 7

*Katz v. Berisford Int'l PLC*, No. 96 Civ. 8695,

    2000 U.S. Dist. LEXIS 9535 (S.D.N.Y. July 6, 2000). ................................................................. 5

*King v. Facebook, Inc.*, 572 F. Supp. 3d 776 (N.D. Cal. 2021) (Chen, J.) ....................................... 21

*Lamke v. Sunstate Equip. Co.*, 387 F Supp 2d 1044 (N.D. Cal. 2004)............................................. 16

*Lewis v. Google LLC*, 461 F. Supp. 3d 938 (N.D. Cal. 2020) (Kim, J.)........................................... 23

*Lewis v. Google LLC*, 851 F. App'x 723 (9th Cir. 2021) ................................................................ 23

*Lewis v. YouTube, LLC*, 244 Cal App 4th 118 (2015) ................................................................ 11, 12

*Marcotte v. Micros Sys.*, No. C 14-01372 LB,

    2014 U.S. Dist. LEXIS 128054 (N.D. Cal. Sep. 11, 2014) ...................................................... 11

*McBride v. Boughton*, 123 Cal. App. 4th 379 (2004) ...................................................................... 20

*McKinnon v. Dollar Thrifty Auto. Grp.*, No. 12-4457 SC,

    2013 U.S. Dist. LEXIS 29095 (N.D. Cal. Mar. 4, 2013) ......................................................... 20

*Monet v. Chase Home Fin., LLC*, No. C 10-0135 RS,

    2010 U.S. Dist. LEXIS 59749 (N.D. Cal. June 16, 2010) ....................................................... 20

*Murj, Inc. v. Rhythm Mgmt. Gp., Inc.*, No. 5:21-cv-00072-EJD,

    2022 U.S. Dist. LEXIS 150486 (N.D. Cal. Aug. 22, 2022) ...................................................... 18

*Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12 (2021) ................................................................ 22, 23

*Oracle Corp. v. DrugLogic, Inc.*, No. C 11-00910 JCS,

    2011 U.S. Dist. LEXIS 133642 (N.D. Cal. Nov. 16, 2011) ...................................................... 18

*Precisely Software Inc. v. Loqate Inc*., No. 22-cv-00552-BLF,

    2022 U.S. Dist. LEXIS 169177 (N.D. Cal. Sep. 19, 2022) ...................................................... 20

*QuickLogic Corp. v. Konda Techs., Inc.*, No. 5:21-cv-04657-EJD,

    2022 U.S. Dist. LEXIS 137189 (N.D. Cal. Aug. 2, 2022) ....................................................... 16

*Rojas v. Bosch Solar Energy Corp.*, 443 F. Supp. 3d 1060 (N.D. Cal. 2020) (Freeman, J.) ............. 19

*Shany Co. v. Crain Walnut Shelling, Inc.*, No. S-11-1112,

    2012 U.S. Dist. LEXIS 76561 (E.D. Cal. May 31, 2012) .......................................................... 5

*Sikhs for Justice, Inc. v Facebook, Inc.,* 697 F App'x 526 (9th Cir 2017) ...................................... 23

*Sikhs for Justice, Inc. v. Facebook, Inc*., 144 F. Supp. 3d 1088 (N.D. Cal. 2015) (Koh, J.) ............. 23

*Spates v. Dameron Hosp. Ass'n*, 114 Cal. App. 4th 208 (2003) ...................................................... 21

*Supervalu, Inc. v. Wexford Underwriting Mgrs., Inc.*, 175 Cal. App. 4th 64 (2009) ....................... 20

*Ward v. Goossen*, 71 F. Supp. 3d 1010 (N.D. Cal. 2014) (Henderson, J.) ......................................... 8

*Wright v. Charles Schwab & Co.*, No. 20-CV-05281-LB,

    2020 U.S. Dist. LEXIS 218154 (N.D. Cal. Nov. 20, 2020) ................................................. 19, 20

**Statutes**

Cal. Civ. Code § 1641 ..................................................................................................................... 8

Cal. Civ. Code § 1668 ................................................................................................................... 16

Communications Decency Act, 47 U.S.C. § 230, *et seq*. ........................................................... 22, 23

**Other Authorities**

5 Witkin, *California Procedure 4th*, Pleading § 741 (1997) ............................................. 17

Judicial Council of Cal. Civ. Jury Insts. § 325 ................................................................ 15

*Works of Aristotle Vol. iii* (W. David Ross, ed.) ............................................................ 3

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................ passim

Fed. R. Civ. P. 8(d)(3) .............................................................................................. 20

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### <u>INTRODUCTION</u>

In this remarkable Motion to Dismiss, YouTube[1] asks the Court to hold its entire user Agreement meaningless and unenforceable. According to YouTube's argument, one provision in the Agreement—"YouTube is under no obligation to host or serve Content"—means that YouTube can violate ***any*** other provision in the Agreement, so long as YouTube ***also*** removes Content in the process of that violation. That argument is contrary to all principles of contract interpretation; one provision of a contract will not be read to render remaining provisions superfluous. More importantly still, the argument depends upon YouTube's intentional misconstruction of Mercola's[2] pleading, which challenges ***not*** YouTube's right to deny a platform, but YouTube's blocking Mercola from accessing or removing its own content.

The problems with YouTube's Motion are evident by examining what Mercola's FAC ***actually*** pleads. According to the FAC, these are the contract violations:

- The Agreement provides that YouTube will not make any material modifications without giving Mercola "reasonable advance notice," "the opportunity to review," and a chance to "remove any Content you have uploaded." (FAC ¶ 38 & n.8.) YouTube breached this provision by materially modifying the Agreement without notice and simultaneously terminating Mercola's account based on the modification. (*Id.* ¶¶ 20-23, 28, 34, 41.) The breach damaged Mercola by denying the opportunity to remove, or to access further, its own content. (*Id.* ¶¶ 42, 72.)

- The Agreement provides that, in the event that a user violates the Community Guidelines, YouTube will offer notice and opportunity to cure breaches before any termination of account, with the only exception being for "severe abuse." (*Id.* ¶¶ 43, 47.) YouTube breached this provision by terminating Mercola's account with no notice or opportunity to cure. (*Id.* ¶¶ 48-50, 82-83.) The breach damaged Mercola by denying the opportunity to remove, or to access further, its own content. (*Id.* ¶¶ 42, 46, 49, 82.)

---

[1] "YouTube" is used herein to refer to Defendant YouTube, LLC, which entered the contract with Plaintiffs, and where appropriate also includes YouTube, LLC's parent entities, Defendants Google LLC and Alphabet Inc. (First Amended Complaint ("FAC," ECF #21) ¶ 2).

[2] "Mercola" is used herein to refer collectively to Plaintiffs Mercola.com, LLC and its founder, Plaintiff Dr. Joseph Mercola (FAC ¶ 6).

YouTube raises two defenses to these claims. **First**, YouTube argues that a separate contract provision—as stated above, "YouTube is under no obligation to host or serve Content"—relieves YouTube of any responsibilities to Mercola under the notice provisions. In addition to rendering Agreement provisions impermissibly meaningless, that assertion rests upon the mistaken assumption that the harm is YouTube's refusal to continue making Mercola's videos available to the public. To the contrary, YouTube's contract breach has usurped Mercola's opportunity to access or retrieve its own content, **apart** from any further hosting or serving for the public. **Second**, YouTube argues that the Agreement's Limitation on Liability precludes Mercola from seeking any damages. But a review of the plain language of the Limitation shows that does not cover breach of the Agreement that results in denial of access.

Thus, this is a straightforward contract case. YouTube tries to complicate the matter by rebutting theories that Mercola does not actually plead. Here is a limited subset of the red herrings populating YouTube's Memorandum in Support of its Motion to Dismiss (("Mem."), ECF #25.):

- According to YouTube (repeatedly, throughout the Memorandum), the relief sought by Mercola is that YouTube be compelled to "host Mercola's content in perpetuity and without qualification." (Mem. 17; *see also id.* 2, 6, 8, 9, 10, 12, 13, 15, 16, 19, 22.) This is fiction. What Mercola actually seeks is exactly what is promised in the Agreement—an "injunction requiring YouTube to provide Mercola with access to its video content." (FAC ¶ 115; *see also, e.g.*, *id.* ¶¶ 40-42, 70-72, 114-115.) Verbatim, Mercola's claim for specific performance seeks "(1) ongoing use of the platform, its channel, and its account, and (2) opportunity **to review changes** to the Agreement, and during that time, **to remove any content from the platform**." (*Id.* ¶ 102 (emphasis added).)

- Relatedly, according to YouTube, Mercola's aim is to "restyle claims that . . . seek to reverse [its] termination as an alleged failure to provide notice." (Mem. 22.) Not so. Mercola properly pleads that the Agreement provides certain safeguards to users (*e.g.*, FAC ¶¶ 38-40, 43-45), the denial of which has harmed Mercola (*e.g.*, *id.* ¶¶ 48-50, 72, 82-83). The termination of Mercola's account is certainly problematic, but the actions that underlie the FAC are the lack of notice and opportunity to remove content.

- According to YouTube, Mercola's lawsuit "takes issue with" "YouTube's three[-]strikes policy and its policies on medical misinformation." (Mem. 21.) Nonsense. Mercola's has not sued YouTube because it does not **like** the three-strikes policy or YouTube's amorphous "misinformation" policies. Mercola has sued because YouTube chose to violate its own

Agreement's policies, injuring Mercola by denying a notice period during which it could remove content. (*E.g.*, FAC ¶¶ 41, 42, 48-50.)

When Mercola accepted YouTube's offer to host video content, Mercola and YouTube entered into a contract, the Agreement. That fact does not appear to be disputed. (Nor do any underlying facts appear to be disputed, although that is not relevant at the pleadings stage.) "The law is reason free from passion." *Works of Aristotle Vol. iii* (W. David Ross, ed.). Mercola asks the Court to see past YouTube's mischaracterizations of the FAC,[3] *ad hominem* attacks on Dr. Joseph Mercola,[4] and attempts to politicize this dispute.[5] Mercola asks this Court to allow the case to continue for what it is—a simple contract matter, well pleaded and capable of being proven.

## **BACKGROUND**

Defendant YouTube is an online video sharing and social media platform on which users can watch, like, share, comment on, and upload videos. (FAC ¶ 1.) Uploading video content is subject to a contract drafted by YouTube and called the Agreement, which users must accept without modification. (*Id.* ¶ 7.) The Agreement incorporates three components: YouTube's Terms of Service; Community Guidelines; and Policy, Safety and Copyright Policies. (*Id.* ¶ 8.) Plaintiff Mercola began

---

[3] Among the more egregious is YouTube's assertion that Mercola's FAC "concedes" that YouTube found "severe or repeated violations" of "YouTube's policies on Medical Information." (Mem. 10 (citing FAC ¶ 25).) The FAC concedes no such thing. FAC ¶ 25 quotes **YouTube's own email** purporting to rely on such violations.

[4] For example, the Memorandum opens by characterizing Dr. Mercola as an "anti-vaccine activist"—he is not—and misleadingly cites FAC ¶ 19, as if that were Plaintiffs' own characterization. (Mem. 1; *but see* Mem. 5 (conceding that characterization actually comes from article).) FAC ¶ 19 quotes a *Washington Post* article that, Mercola alleges, **YouTube worked with the reporter to create**. (FAC ¶¶ 19, 27.) And tellingly, although the FAC is brought on behalf of the natural-health web content provider Mercola.com, LLC **and** its founder, YouTube's Memorandum refers to Plaintiffs collectively as "he," as if no business ever was even involved, only an individual with whose views YouTube disagrees.

[5] Entirely inappropriate for a Rule 12(b)(6) motion, YouTube attaches a declaration purporting to establish that Mercola.com, LLC "repeatedly spread misinformation about approved vaccines." (Mem. 5 (citing Mot. Ex. G, Declaration of Lerner).) That is neither true nor at issue at this stage. An equally transparent attempt at politicization is YouTube's reference to "a link" (not pleaded or relied on in the FAC) that Dr. Joseph Mercola is "partially responsible for helping seed the skepticism that's contributed to slowing vaccination rates across the country." (*Id.*) None of these potshots relates to Plaintiffs' ability to enter or enforce a contract.

3

uploading content to YouTube in or around 2005. (*Id.* ¶¶ 8-9.) Mercola has been careful to abide the Agreement's terms and has altered its video-sharing behavior to meet those terms as, throughout the years, YouTube has unilaterally changed them. (*Id.* ¶¶ 12-15.) The Agreement between YouTube and Mercola was mutually beneficial: YouTube provided a platform for Mercola's content, and Mercola uploaded professionally produced and edited videos, which generated user views and advertising revenue for YouTube. (*Id.* ¶¶ 11, 104.)

On September 29, 2021, YouTube breached the terms of the Agreement when it materially modified the terms, gave Mercola no opportunity to review the modifications as promised by the Agreement, and de-platformed Mercola's YouTube channel without notice or warning, thereby terminating Mercola's access to its own video content in its channel account. (*E.g.*, *id.* ¶¶ 19-21, 23, 26, 28-30, 42, 49, 72, 82.) To date, Mercola remains unable to access that content, causing injury to Mercola's interests. (*Id.* ¶¶ 34, 73, 84.)

After attempting to appeal YouTube's contract breach and regain access to its content, Mercola timely filed this lawsuit on September 28, 2021. (Complaint, ECF #1.) On December 16, 2022, Mercola filed a First Amended Complaint, alleging claims for breach of contract, breach of implied covenant of good faith and fair dealing, specific performance, unjust enrichment, and conversion. On February 10, 2023, YouTube moved to dismiss the FAC pursuant to Rule 12(b)(6). YouTube's Motion to Dismiss does not challenge the timeliness of the action or this Court's jurisdiction, only whether Mercola has stated a claim.

## **ARGUMENT**

### I.   **The First Amended Complaint Properly Alleges Breach of Contract Based on Material Modification of Agreement Without Notice (Count I).**

YouTube's Agreement with users includes a set of Community Guidelines. In September 2021, YouTube's Terms of Service, also part of the Agreement, provided that YouTube would "provide reasonable advance notice of any material modifications to this Agreement and the

opportunity to review them." (FAC ¶ 38 & n.8.) The purpose of the notice provision included giving users, such as Mercola, the opportunity to remove content from the YouTube platform before any material modification took effect: "If you do not agree to the modified terms, you should remove any Content you have uploaded and discontinue your use of the Service." (*Id.*) YouTube violated this specific provision when, on September 29, 2021, it materially amended the Agreement, specifically the Community Guidelines, and simultaneously—*i.e.*, with no advance notice—terminated Mercola's channel and blocked Mercola's access to all content thereon. (*Id.* ¶¶ 20-23, 28, 34, 41.) This violation injured Mercola by denying the opportunity to remove its own content, including more than fifteen years' worth of professionally produced videos. (*Id.* ¶¶ 42, 72.) This contract breach forms the basis of Count I of the FAC. (*Id.* ¶¶ 66-73.)

YouTube does not challenge whether those facts, as pleaded in the First Amended Complaint, state a cause of action for breach of contract. Plainly, they do. Instead, YouTube argues that two additional provisions, titled Removal of Content and Limitation on Liability, preclude Mercola from bringing action on the contract violations.[6] As set forth herein, YouTube is wrong.

**A.    The "Removal of Content" Provision Does Not Preclude Mercola's Action.**

YouTube does not dispute that the FAC pleads that YouTube breached the contract provisions regarding "reasonable notice" and opportunity to "remove any Content you have uploaded." Instead, YouTube points to another provision, titled "Removal of Content By YouTube" as a defense:

---

[6] YouTube also throws in an argument that its modification of the Community Guidelines was not "material." (Mem. 11.) That is for the trier of fact to determine and inappropriate in a Rule 12(b)(6) Motion. *See, e.g.*, *Katz v. Berisford Int'l PLC*, No. 96 Civ. 8695, 2000 U.S. Dist. LEXIS 9535, at *7 (S.D.N.Y. July 6, 2000). Nor does the argument make sense. As of September 28, 2021, Mercola was a user in good standing of YouTube. (FAC ¶ 17.) On September 29, 2021, YouTube changed the terms of the Agreement so dramatically that it simultaneously de-platformed Mercola's entire catalogue of content—although nothing else changed between September 28 and 29. That must be the very essence of a material change. *See, e.g.*, *Shany Co. v. Crain Walnut Shelling, Inc.*, No. S-11-1112, 2012 U.S. Dist. LEXIS 76561, at *18 (E.D. Cal. May 31, 2012) ("In California, as in New York, a material alteration is one that would 'result in surprise or hardship if incorporated without express awareness by the other party.'").

**Removal of Content By YouTube**

If we reasonably believe that any Content is in breach of this Agreement or may cause harm to YouTube, our users, or third parties, we may remove or take down that Content in our discretion. We will notify you with the reason for our action unless we reasonably believe that to do so: (a) would breach the law or the direction of a legal enforcement authority or would otherwise risk legal liability for YouTube or our Affiliates; (b) would compromise an investigation or the integrity or operation of the Service; or (c) would cause harm to any user, other third party, YouTube or our Affiliates. You can learn more about reporting and enforcement, including how to appeal on the Troubleshooting page of our Help Center.

(*Terms of Service*, YouTube, https://www.youtube.com/t/terms?archive=20210317 (last visited Mar. 9, 2023) (hereinafter "2021 Terms of Service").) For three reasons, YouTube's reliance on this separate provision cannot overcome its breach of the notice and opportunity provisions.

### 1.    YouTube Intentionally Misconstrues Mercola's Pleading.

As is evident from the pleading (*see supra*, Introduction and Background), this is ***not*** a case about "removal of content by YouTube." Nowhere in the FAC appears an allegation that YouTube does not have the right to regulate, refuse to display, or remove content. The gravamen of this case is YouTube's breaching the Agreement by failing to provide ***Mercola*** with notice and opportunity to remove its content. The contract provides that YouTube will provide advance notice of material modifications (YouTube did not) so that a user can "remove any Content you have uploaded" (Mercola could not). (FAC ¶ 38.) This is separate and apart from any provision about YouTube's right to discontinue showing content that YouTube (or "authorities," presumably government and administrative officials, *id.* ¶ 22) dislikes.[7]

If YouTube wishes to pull from other parts of the Agreement, the relevant provision would be that which immediately precedes "Removal of Content By YouTube." The provision before is titled

---

[7] Mercola contends that the entire Agreement has been incorporated by reference, along with a *Washington Post* article cited in the FAC. (Mem. 3 n.2.) YouTube also urges the Court to take judicial notice of its "misinformation policies" as "matters of public record outside the pleadings." Regardless of whether the Court is inclined to do so, those policies are irrelevant to this dispute, which hinges on neither YouTube's right to de-platform content nor its reasons for doing so.

"Removing Your Content" and deals with the right (indeed, sometimes obligation) of a user to access and remove its own content. As of September 29, 2021, that provision stated:

**Removing Your Content**

You may remove your Content from the Service at any time. You also have the option to make a copy of your Content before removing it. You must remove your Content if you no longer have the rights required by these terms.

(2021 Terms of Service.) Because of YouTube's breach of the notice and opportunity provisions, Mercola was denied the chance to "remove [its] Content from the Service at any time." ***That*** is the operative fact, not YouTube's rewriting of the pleading to pretend that Mercola challenges YouTube's right to remove content. Indeed, YouTube implicitly acknowledges that the issue here is Mercola's right to remove its own content, arguing: "With respect to YouTube's right to retain content, the Terms state, 'You understand and agree, however, that YouTube ***may retain***, but not display, distribute, or perform, server copies of your videos that have been removed or deleted.'" (Mem. 3 (emphasis YouTube's).) That quote comes from the following contract provision:

**Duration of License**

The licenses granted by you continue for a commercially reasonable period of time ***after you remove or delete your Content*** from the Service. You understand and agree, however, that YouTube may retain, but not display, distribute, or perform, server copies of your videos that have been removed or deleted.

(2021 Terms of Service (emphasis added).) That is, YouTube relies on a provision applicable to ***Mercola's*** removal of its own content—precisely the right that YouTube has withheld.[8]

Mercola, not YouTube, "is the master of the complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 388 (1987). This is not a case directed at removal of content, and YouTube cannot rewrite the allegations to shoehorn them into inapplicable arguments. *See, e.g.*, *J.E.L. v. S.F. Unified Sch. Dist.*, 185 F. Supp. 3d 1196, 1199 (N.D. Cal. 2016) (Donato, J.) (denying dismissal of certain claims

---

[8] It bears mentioning that YouTube has not sequestered and retained "server copies" of removed videos. YouTube is denying Mercola access to the ***only*** currently known versions of Mercola's professional produced video content. (*E.g.*, FAC ¶ 30.)

based on defendant's attempt to "rewrit[e] . . . plaintiff's claims").[9] Breach of contract is appropriately pleaded.

### 2. YouTube's Reliance on "Removal of Content" Would Have Nonsensical Results.

YouTube's argument is that the Agreement gives YouTube the right to breach any provision (notwithstanding injury to the contractually bound user) so long as YouTube *also* de-platforms content along with the breach. YouTube claims that, as long as it can invoke the "Removal of Content By YouTube" provision, then it need not give notice of modifications or the chance for the user to remove its own content. (Mem. 7.) But the unfettered right to breach contract provisions so long as YouTube also removes content—that is, so long as YouTube also effectively terminates the Agreement—would render the remaining contractual promises meaningless. The longstanding rules of contract interpretation do not allow a provision to be construed in a manner that would render the remaining provisions meaningless. *See, e.g.*, *Ward v. Goossen*, 71 F. Supp. 3d 1010, 1014 (N.D. Cal. 2014) (Henderson, J.) (citations omitted); *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473 (1998) (citations omitted). A contract must be construed so that its provisions work together. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). YouTube may have the right to discontinue showing content, but that does not override its obligation to meet the other Agreement provisions.

---

[9] For the proposition that there is no breach of contract, YouTube cites cases (all but one in which it was defendant) supporting the general proposition that it possessed contract authority to remove content. (*E.g.*, Mem. 7-8.) None of those cases addresses YouTube's material modification of the Agreement without notice (*e.g.*, FAC ¶¶ 27-28, 41), and only one involved the "Three Strikes Warning Policy" at issue in this case (*e.g.*, *id.* ¶¶ 43-44): *Enhanced Athlete Inc. v. Google LLC*, 479 F. Supp. 3d 824, 828 (N.D. Cal. 2020) (Gilliam, Jr., J.) (Mem. 8), in which the plaintiff *had* received "three strikes in three-months." By contrast, the FAC alleges that "Mercola received no warning before the actions described herein were taken and had never previously received a 'strike' for any violation of Community Guidelines." (FAC ¶ 29.)

8

### 3. Even if the "Removal of Content" Provision Could Override Other Provisions, It Would Not Reach as Far as YouTube Claims.

The provision on which YouTube relies to override its other obligations states this: "If we reasonably believe that any Content is in breach of this Agreement or may cause harm to YouTube, our users, or third parties, we may remove or take down that Content in our discretion." *See supra*. YouTube contends that it had no obligation to meet the Agreement's notice provision because this provision allowed YouTube to de-platform Mercola. But does that make sense? As the FAC alleges, on September 29, 2021, YouTube amended its Community Guidelines to add a policy on "vaccine misinformation," which purports to ban "harmful misinformation" about any "currently approved and administered vaccines." (FAC ¶ 26.) YouTube, however, did not remove just content that (it contends) breached the modified Community Guidelines. YouTube, admittedly, "terminated Mercola's [entire] channel and account." (Mem. 5.) That channel housed fifteen years of professionally produced video content (FAC ¶¶ 10-11, 30) ranging from topics like the importance of sunshine and vitamin D to the healthiest brands of pet foods. Under no conceivable interpretation was this *all* "Content . . . in breach of this Agreement" or that "may cause harm to YouTube, our users, or third parties." Even if all the other problems with YouTube's argument did not exist, YouTube could not rely on a provision that did not sanction its own conduct.

### B. The "Limitation on Liability" Provision Does Not Preclude Mercola's Action.

YouTube's next argument is that, because the Agreement contains a "Limitation on Liability," this action cannot proceed. As alleged in the FAC, this is the entirety of the limitation, which is written by YouTube in all-caps:

**Limitation of Liability**

EXCEPT AS REQUIRED BY APPLICABLE LAW, YOUTUBE, ITS AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS WILL NOT BE RESPONSIBLE FOR ANY LOSS OF PROFITS, REVENUES, BUSINESS OPPORTUNITIES, GOODWILL, OR ANTICIPATED SAVINGS; LOSS OR CORRUPTION OF DATA; INDIRECT OR CONSEQUENTIAL LOSS; PUNITIVE DAMAGES CAUSED BY:

9

1.  ERRORS, MISTAKES, OR INACCURACIES ON THE SERVICE;

2.  PERSONAL INJURY OR PROPERTY DAMAGE RESULTING FROM YOUR USE OF THE SERVICE;

3.  ANY UNAUTHORIZED ACCESS TO OR USE OF THE SERVICE;

4.  ANY INTERRUPTION OR CESSATION OF THE SERVICE;

5.  ANY VIRUSES OR MALICIOUS CODE TRANSMITTED TO OR THROUGH THE SERVICE BY ANY THIRD PARTY;

6.  ANY CONTENT WHETHER SUBMITTED BY A USER OR YOUTUBE, INCLUDING YOUR USE OF CONTENT; AND/OR

7.  THE REMOVAL OR UNAVAILABILITY OF ANY CONTENT.

THIS PROVISION APPLIES TO ANY CLAIM, REGARDLESS OF WHETHER THE CLAIM ASSERTED IS BASED ON WARRANTY, CONTRACT, TORT, OR ANY OTHER LEGAL THEORY.

YOUTUBE AND ITS AFFILIATES' TOTAL LIABILITY FOR ANY CLAIMS ARISING FROM OR RELATING TO THE SERVICE IS LIMITED TO THE GREATER OF: (A) THE AMOUNT OF REVENUE THAT YOUTUBE HAS PAID TO YOU FROM YOUR USE OF THE SERVICE IN THE 12 MONTHS BEFORE THE DATE OF YOUR NOTICE, IN WRITING TO YOUTUBE, OF THE CLAIM; AND (B) USD $500.

(FAC ¶ 51.) The shortcomings in YouTube's reliance on this provision are set forth below.

**A.    By Its Own Terms, the Limitation on Liability Does Not Apply.**

As shown in this chart, none of the Limitation on Liability's seven enumerated categories applies to this action for YouTube's breach of notification provisions:

| No. | Covered Action | Applicability Here |
|-----|----------------|--------------------|
| 1 | "errors, mistakes, or inaccuracies on the Service" | Inapplicable. Mercola does not allege that its video content was presented with errors. |
| 2 | "personal injury or property damage resulting from your use of the Service" | Inapplicable. The FAC includes no claim for personal injury or property damage. |
| 3 | "any unauthorized access to or use of the Service" | Inapplicable. Mercola alleges that it (the owner of the content, with undisputed authority) is the only party being precluded from access or use. |
| 4 | "any interruption or cessation of the Service" | Inapplicable. Mercola does not allege that YouTube has interrupted or ceased its Service platform. |
| 5 | "any viruses or malicious code transmitted to or through the Service by any third party" | Inapplicable. There is no allegation of any virus or malicious code. |

10

| 6 | "any content whether submitted by a user or YouTube, including your use of content" | Inapplicable. Mercola does not claim injury stemming from its "use of content," whether its own or another user's. |
| 7 | "the removal or unavailability of any content" | Inapplicable. As set forth at length, *supra*, this suit challenges breach of notice and opportunity to remove, not whether YouTube users can see Mercola's videos. |

YouTube cites Nos. 4 and 7, which it attempts to tie (Mem. 14) to FAC ¶¶ 72 and 82:

FAC ¶ 72:   "YouTube violated this provision [for notification of material modifications and opportunity to remove content] when, on September 29, 2021, it terminated Mercola's channel and immediately denied Mercola further access to its account, including any opportunity to access the content it housed on the platform."

FAC ¶ 82:   "YouTube violated its Agreement, specifically the 'three strikes' warning policy and the 'vaccine misinformation policy,' when it summarily terminated Mercola's entire channel and denied Mercola access to its account and content without any warning."

The Agreement in effect as of September 29, 2021 defines "Service" as "the products, services and features" made available to users "as part of the [YouTube] platform." (2021 Terms of Service.) Failing to give Mercola the required notice or an opportunity to remove its content does not mean that users' "products, services and features" were interrupted or ceased, so No. 4 does not apply. Nor does No. 7. As set forth *supra*, it is only **YouTube** that (inaccurately) characterizes this action as challenging the unavailability of Mercola's content to YouTube users. What the FAC **actually** challenges is the lack of notice and opportunity for Mercola to remove its own content—promises made by the Agreement and untouched by the Limitation on Liability. *Cf. Marcotte v. Micros Sys.*, No. C 14-01372 LB, 2014 U.S. Dist. LEXIS 128054, at *28 (N.D. Cal. Sep. 11, 2014) ("standard contract construction rules [include] the rules that the plain language of contracts governs and ambiguities are construed against the drafter").

YouTube relies upon *Lewis v. YouTube, LLC* (Mem. 14), which although superficially appealing, concerns a different theory. The *Lewis* plaintiff "characterize[d] her claim as a deletion of her content without prior notice." 244 Cal. App. 4th 118, 126 (2015). The court, however, recognized that the **actual** underlying claim (as stated in her pleading) was that "YouTube wrongfully failed to

include her videos, the number of views of these videos, and the comments on the videos by other YouTube visitors on its Web site." *Id.* The damage at issue in *Lewis* was not what Mercola alleges, which is denial of the opportunity to remove content or transfer it to another platform. That is not covered by the Limitation on Liability applicable to Mercola—which, moreover, is a ***different*** limitation than what was in effect in *Lewis*.[10]

### C. Even if the Limitation on Liability Did Apply to Mercola's Action (It Does Not), It Would Provide No Ground to Dismiss the Action.

According to YouTube, the Limitation on Liability "prevents Mercola from recovering any monetary damages on" his contract claims.[11] As set forth above, the Limitation on Liability does not affect Mercola's claim that YouTube failed to provide required notice and opportunity. But even if it did, the contract claims still would proceed, for at least $500 apiece, which is the damages cap specified in the Limitation on Liability. Therefore, the Limitation on Liability provides no possible Rule 12(b)(6) ground to ***dismiss*** this action.[12]

---

[10] The operative provision from the Limitation on Liability in effect in *Lewis* limited damages resulting from "(V) ANY ERRORS OR OMISSIONS IN ANY CONTENT OR FOR ANY LOSS OR DAMAGE OF ANY KIND INCURRED AS A RESULT OF YOUR USE OF AND CONTENT POSTED, EMAILED, TRANSMITTED, OR OTHERWISE MADE AVAILABLE VIA THE SERVICES, WHETHER BASED ON WARRANTY, CONTRACT, TORT, OR ANY OTHER LEGAL THEORY." 244 Cal. App. 4th at 124-25 (2015). (*Compare* FAC ¶ 51.)

[11] Confusingly, the Memorandum refers to "an additional basis to dismiss Counts I-II, IV" (three counts) but then states that the Limitation on Liability "prevents Mercola from recovering any monetary damages on either [two counts] claim." (Mem. 14.) Later, the Memorandum asserts the Limitation on Liability to cover Counts I, II, and III but ***not*** IV. Mercola addresses the Limitation on Liability argument wherever it is found in the Memorandum, *i.e.*, pages 14 and 18.

[12] In a footnote, YouTube references the "amount in controversy" requirement for diversity jurisdiction, apparently suggesting that because of the Limitation on Liability, the $75,000 minimum would not be met. (Mem. 15 n.4.) But YouTube has not challenged this Court's jurisdiction, which can also be premised on the value of the injunctive relief sought. *See Bayol v. Zipcar, Inc.*, No. 14-cv-02483-TEH, 2015 U.S. Dist. LEXIS 109027, at *19 (N.D. Cal. Aug. 18, 2015) ("The amount in controversy can include . . . the value of injunctive relief."); *Calinawan v. Ocwen Fin. Corp.*, No. C 13-0562 RS, 2013 U.S. Dist. LEXIS 86408, at *4 (N.D. Cal. June 19, 2013) (citation omitted) ("requests for injunctive relief generally may be assigned a monetary value when evaluating the amount in controversy.").

**II.    The First Amended Complaint Properly Alleges Breach of Contract Based on Violation of the "Three-Strike" Warning Policy (Count II).**

YouTube's Community Guidelines, part of its Agreement with users, included a "three-strike" policy that offers notice and opportunity to cure breaches before any termination of account, with the only exception being for "severe abuse." (*Id.* ¶¶ 43, 47.) Mercola has always abided by the Community Guidelines, including on prior occasions when YouTube unilaterally changed them, and Mercola's account was in good standing as of September 28, 2021. (*Id.* ¶¶ 13-17.) On September 29, 2021, with no strikes or opportunity to cure (or explanation of which videos might have violated the Community Guidelines), YouTube terminated Mercola's channel and blocked Mercola's access to all content thereon. (*Id.* ¶¶ 24-25, 29-31, 34, 41.) This violation of the Agreement denied Mercola the opportunity to remove its own content, including more than fifteen years' worth of professionally produced videos, thereby causing damage to Mercola. (*Id.* ¶¶ 42, 72.) This contract breach forms the basis of Count II of the FAC. (*Id.* ¶¶ 75-84.)

YouTube musters three defenses to this breach of contract. ***First***, YouTube relies again on the provision titled "Removal of Content By YouTube." (Mem. 8.) For the several reasons explained *supra*, Argument Part I.A, that provision does not excuse YouTube's failure to abide by its three-strike policy and denial, without warning, of Mercola's ability to remove its content. (FAC ¶¶ 82-84.) ***Second***, YouTube relies again on the Agreement's Limitation of Liability provision. And again, for the reasons explained *supra*, Argument Part I.B, that provision does not cap Mercola's damages available based on the breach of contract, and even if it did, would not support dismissal of this action. ***Third***, in its only new argument, YouTube points to the three-strikes provision regarding "severe abuse": "Sometimes a single case of severe abuse will result in channel termination without warning." (FAC ¶ 43.) This "severe abuse" statement is also repeated in YouTube's new "vaccine misinformation" policy announced on September 29, 2021: "We may also terminate your channel or account after a single case of severe abuse, or when the channel is dedicated to a policy violation."

(*Id.* ¶ 44.) But these "severe abuse" provisions cannot justify YouTube's violation of the three-strikes policy, and certainly cannot support a Rule 12(b)(6) dismissal motion.

That is, whether Mercola's actions could constitute "severe abuse," such as might relieve YouTube of its obligation to give notice under the three-strikes policy, is a question for the trier of fact, inappropriate for a motion on the pleadings. *See, e.g.*, *Gabana Gulf Distrib., Ltd. v. Gap Int'l Sales, Inc.*, No. C 06-02584 CRB, 2008 U.S. Dist. LEXIS 1658, at *24 (N.D. Cal. Jan. 9, 2008) ("Whether [defendant] exercised its discretion for a purpose that was within the reasonable contemplation of the parties at the time they signed the [agreement] is a triable question that must be answered by the jury."). When the time does arrive, it is unlikely that YouTube will be able to convince a trier of fact that "severe abuse" occurred. As alleged, on September 28, 2021, Mercola was a member in good standing of YouTube, and no content reported in violation of any Community Guideline. (FAC ¶ 17.) YouTube materially modified the Community Guidelines on the morning of September 29, 2021, and simultaneously terminated Mercola. (*Id.* ¶¶ 20-23.) Yet between September 28 and losing access to its own content on September 29, ***Mercola posted no content***. To excuse compliance with the "three strikes" notice policy, YouTube must establish that Mercola committed "severe abuse" of a policy ***not yet in effect***.[13]

## III.    The First Amended Complaint Properly Alleges a Claim for Breach of Implied Covenant of Good Faith and Fair Dealing.

Every contract in California includes an implied promise of good faith and fair dealing, which means that neither party will do anything to interfere unfairly with the right of any other party to

---

[13] YouTube faults the FAC for providing just "a single conclusory statement that 'Mercola has never committed any "severe abuse" . . . .'" (Mem. 11.) But of course, Mercola cannot be more specific because, to date, YouTube has never informed Mercola of ***what*** content was deemed to violate the new "vaccine misinformation" policy. Neither YouTube's September 29, 2021 email (FAC ¶ 24) nor the September 20, 2022 denial of Mercola's appeal (*id.* ¶ 33) informed Mercola of which video(s) among fifteen-plus years of regular content was the problem. Until discovery takes place, it will have to suffice that Mercola is unaware of what the immediate "severe abuse" of a newly announced policy could be.

receive the benefits of the contract. *See generally* Judicial Council of Cal. Civ. Jury Insts. § 325. The elements of a claim for breach of the implied covenant of good faith and fair dealing are (1) the existence of a contract, *i.e.*, the Agreement; (2) that Mercola did all or substantially all of what the Agreement required it to do; (3) that all conditions required for YouTube's performance had occurred; (4) that YouTube prevented Mercola from receiving benefits under the Agreement, *i.e.*, the right to advance notice and to remove its own content; (5) that in doing so, YouTube did not act fairly or in good faith; and (6) that Mercola was harmed by YouTube's conduct. *See id*. On its face, the FAC alleges these elements of a claim for breach of implied covenant and fair dealing (FAC ¶¶ 86-92), which YouTube does not dispute.

Instead, YouTube makes three responses. ***First***, YouTube argues, again, that its conduct was sanctioned by the provision titled "Removal of Content By YouTube." (Mem. 17-18.) This argument fails for the same reasons as with the claims for breach of contract. *See supra*, Part I. The claim for breach of implied covenant alleges:

> 90. Acting (on information and belief) in concert with government and administrative officials, and unfairly and without good faith, YouTube prevented Mercola from receiving the benefits of the Agreement. YouTube prevented Mercola from receiving the benefits of the Agreement by at least the following conduct:
>
> - on September 29, 2021, unilaterally making material modifications to the Community Guidelines, making them effective immediately, and offering Mercola no reasonable advance notice or opportunity to review the changes;
>
> - on September 29, 2021, terminating Mercola's channel and immediately denying Mercola further access to its account, including any opportunity to access the content it housed on the platform;
>
> - failing to inform Mercola of what removed content violated which policies, and why additional content was removed.

(FAC ¶ 90.) Whatever YouTube's right to remove content might be (Mem. 18), nothing in the Agreement gave YouTube an affirmative right to make material modifications without notice or opportunity to review; to deny Mercola access during that time to its own content; or to fail to inform Mercola of what its offense had been.

15

**Second**, YouTube argues that the claim for breach of implied covenant should be dismissed because it is "duplicative" of the claims for breach of contract. (Mem. 18.) The leading California case is *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317 (2000):

> "The central teaching of *Guz* is that, in most cases, a claim for breach of the implied covenant can add nothing to a claim for breach of contract." *Lamke v. Sunstate Equip*[.] *Co., LLC.*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004). **Nevertheless, a plaintiff may bring implied covenant claim where the plaintiff alleges that the defendant acted in bad faith to frustrate the contract's benefits**. *See Guz,* 24 Cal. 4th at 353 n.18 (acknowledging that "the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled . . . .").

*QuickLogic Corp. v. Konda Techs., Inc.*, No. 5:21-cv-04657-EJD, 2022 U.S. Dist. LEXIS 137189, at *23 (N.D. Cal. Aug. 2, 2022) (emphasis added). The FAC alleges exactly this bad faith to frustrate Mercola's rights under the Agreement—namely, that YouTube colluded with government officials to disadvantage Mercola (FAC ¶¶ 22, 90); that YouTube disclosed information to the *Washington Post* while concealing the same from Mercola in order to prevent Mercola from complying with revised Community Guidelines or removing its video content from the platform (*id.* ¶¶ 19, 23, 27-30, 90); and that YouTube used the new Community Guidelines as a pretext to remove and block Mercola's access to **all** its video content (*id.* ¶¶ 23-25, 31, 34-35, 90). Thus, Mercola states a claim for breach of implied covenant.[14]

**Third**, YouTube asserts: "Mercola is barred from recovering damages on [its] implied covenant claim." (Mem. 18 (citing Mem. 14-15; *Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 677 (9th Cir. 2018)).) *Darnaa* stands for the proposition that Cal. Civ. Code § 1668 "generally does not

---

[14] YouTube bases its contrary argument on citation to a single case, *Daniels v. Alphabet Inc.*, No. 20-cv-04687-VKD, 2021 U.S. Dist. LEXIS 64385 (N.D. Cal. Mar. 31, 2021) (Mem. 18), which holds: "While a plaintiff may bring claims for both breach of contract and breach of the implied covenant, when both claims rely on the same alleged acts and seek the same relief, the Court may disregard the breach of the implied covenant claim as superfluous." *Id.* at *27 (citations omitted). *Daniels* thus suggests that **if** the FAC did not also allege YouTube's bad-faith collusion and concealment, **then** the Court would have discretion to disregard the claim for breach of implied covenant. Whereas the condition precedent is not present, the Court need not disregard the claim.

prohibit parties from limiting liability for breach of contract, including breach of the implied covenant." 756 F. App'x at 676 (citation omitted). The problem, however, is that the Agreement's "Limitation on Liability" provision, all the reasons set forth *supra*, Part I.B, does not apply to this action (and even if it did apply, would cap, not preclude, damages).

## IV.    The First Amended Complaint Properly Alleges a Claim for Specific Performance.

The elements of a claim for specific performance are (1) a contract with sufficiently definite terms, (2) adequate consideration, (3) similarity between the requested performance and the contract terms, (4) mutuality of remedies, and (5) inadequate legal remedy for the plaintiff. *See Blackburn v. Charnley*, 117 Cal. App. 4th 758, 766 (2004); 5 Witkin, *California Procedure 4th*, Pleading § 741 (1997). On its face, the FAC alleges the elements of a claim for specific performance (FAC ¶¶ 94-101), which YouTube does not dispute. Instead, yet again, YouTube misconstrues what Mercola seeks, and then purports to defeat that misconstruction. Finally, YouTube directly contradicts the rest of its Memorandum by suggesting that the Agreement does not even give rise to contractual obligations. (Mem. 15-17.)

***First***, YouTube argues that Mercola is not entitled to the "sweeping speech restriction" of "a judicial order compelling YouTube to host Mercola's content in perpetuity and without qualification." (Mem. 17; *see also id.* 15.) That is an absurd argument. Nowhere does the FAC seek the Court to order perpetual public display of Mercola's video content on YouTube.[15] The FAC's Prayer for specific performance, simple and straightforward, requests that Mercola have access to the platform to get its video content back: "For YouTube's specific performance on the Agreement, in a manner deemed appropriate by the Court and including at least Mercola's access to its video content, the value of which exceeds $75,000." (FAC ¶ 114.) This relief is based upon the allegation that Mercola

---

[15] This also remedies YouTube's last-ditch First Amendment argument, which is premised on a notion that the Court is going to usurp YouTube's editorial control and force publication. (Mem. 16-17.) YouTube amasses cases to argue against relief that is not requested.

is entitled to "ongoing use of the platform, its channel, and its account" with "opportunity to review changes to the Agreement, and during that time, to remove any content from the platform." (*Id.* ¶ 102.) The claim for specific performance seeks only what is due to Mercola, like any YouTube user: "reasonable advance notice of any material modifications to this Agreement and the opportunity to review them," so that if the user does not agree to the modified terms, it can remove any content and discontinue use. (*Id.* ¶ 38 & n.6; *see also supra*, Part I.) *See, e.g.*, *Murj, Inc. v. Rhythm Mgmt. Gp., Inc.*, No. 5:21-cv-00072-EJD, 2022 U.S. Dist. LEXIS 150486, at *18-19 (N.D. Cal. Aug. 22, 2022) (holding that properly pleaded claim for breach of contract, without adequate legal remedy, necessarily provides basis for specific performance).

**Second**, YouTube argues that "the terms on which Mercola bases [its] specific performance claim are not 'sufficiently definite to make the precise act which is to be done clearly ascertainable.'" (Mem. 16 (citing *Cal. Phys. Serv., Inc. v. Healthplan Servs., Inc.*, No. 3:18-CV-03730-JD, 2021 U.S. Dist. LEXIS 44170, at *13 (N.D. Cal. Mar. 9, 2021).) To the contrary, sufficiently definite terms are present here. As noted *supra*, and as alleged throughout the FAC, Mercola bases its claim for specific performance on this term from the Agreement:

**Modifying this Agreement**

We may modify this Agreement, for example, to reflect changes to our Service or for legal, regulatory, or security reasons. YouTube will provide ***reasonable advance notice*** of any material modifications to this Agreement and ***the opportunity to review them***, except that modifications addressing newly available features of the Service or modifications made for legal reasons may be effective immediately without notice. Modifications to this Agreement will only apply going forward. If you do not agree to the modified terms, you should ***remove any Content you have uploaded*** and discontinue your use of the Service.

(FAC ¶ 38 (emphasis added); *see also, e.g.*, *id.* ¶¶ 40, 70.) Mercola requests that YouTube be enjoined to provide this notice and opportunity, which YouTube itself drafted in the Agreement to which it binds users. (*Id.* ¶¶ 102, 114.) Any purported confusion on this point now is created by YouTube. *Cf. Oracle Corp. v. DrugLogic, Inc.*, No. C 11-00910 JCS, 2011 U.S. Dist. LEXIS 133642, *44-45 (N.D. Cal. Nov. 16, 2011) (holding that where pleading includes allegations of breach and threat of

18

continued harm that renders legal remedies inadequate, there is no ground to dismiss specific performance).

**Third**, YouTube's argument against specific performance contradicts every other argument in the Memorandum. YouTube acknowledges, as it must, that the "Agreement provides users an opportunity to 'remove any Content [they] have uploaded and discontinue [their] use of the Service' if they do not agree with any modified terms" (Mem. 16)—precisely the opportunity that Mercola says it has been denied (*e.g.*, FAC ¶¶ 27-30, 41-42). But inexplicably, YouTube follows that admission by stating, "Mercola cannot demand that YouTube specifically perform what are mere guidelines to users." (Mem. 16 (citing *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 931 (N.D. Cal. 2012) (Whyte, J.) ("Apple argues that the User Guide [for an iPhone] is merely an instruction manual, and therefore does not give rise contractual obligations. The court agrees.").) YouTube's entire argument in this Motion to Dismiss is that the Agreement—which calls itself a "contract" that "also explains that there are some things [YouTube] will not be responsible for" (2021 Terms of Service)—precludes Mercola's lawsuit. Now, regarding specific performance, YouTube suggests that the Agreement does ***not*** give rise to contractual obligations?

## V. The First Amended Complaint Properly Alleges a Claim for Unjust Enrichment.

Immediately after suggesting that the Agreement does not give rise to contractual obligations, YouTube argues that "Mercola's unjust enrichment claim fails as a matter of law because 'the parties have a contract, and there thus cannot be a separate claim for unjust enrichment.'" (Mem. 18 (citing *Wright v. Charles Schwab & Co.*, No. 20-CV-05281-LB, 2020 U.S. Dist. LEXIS 218154, at *10 (N.D. Cal. Nov. 20, 2020)).) With that argument, YouTube casts its net a bit too wide for a Rule 12(b)(6) motion. Mercola is entitled, at the pleadings stage, to state a claim for unjust enrichment in the alternative. *See, e.g.*, *Rojas v. Bosch Solar Energy Corp.*, 443 F. Supp. 3d 1060, 1080 (N.D. Cal. 2020) (Freeman, J.) ("this Court has held that a claim for unjust enrichment may be asserted under California law, and that such a claim is not subject to dismissal at the pleading stage even if

19

duplicative of other claims"). When both unjust enrichment and contract claims are stated in a complaint, unjust enrichment is construed as an equitable alternative to contract recovery, and therefore not duplicative. *See, e.g.*, *Wright*, 2020 U.S. Dist. LEXIS 218154, at *10 ("Courts in this district have allowed standalone claims for unjust enrichment (even if there is a contract claim) . . . ."); *McKinnon v. Dollar Thrifty Auto. Grp.*, No. 12-4457 SC, 2013 U.S. Dist. LEXIS 29095, at *23-24 (N.D. Cal. Mar. 4, 2013) ("Plaintiffs are correct that this Court has recognized unjust enrichment as an equitable alternative to breach of contract claims." (citing *Monet v. Chase Home Fin., LLC*, No. C 10-0135 RS, 2010 U.S. Dist. LEXIS 59749, at *8-9 (N.D. Cal. June 16, 2010); *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004))); *cf.* Fed. R. Civ. P. 8(d)(3) ("A party may state as many claims or defenses as it has, regardless of consistency."). Mercola has pleaded that YouTube obtained benefits through conversion (FAC ¶¶ 34, 105, 108, 111-12) and that YouTube colluded with third parties to take action to Mercola's detriment (*e.g.*, *id.* ¶¶ 22, 27, 35, 108), which are not actions covered by the Agreement. Moreover, YouTube itself, in the Motion at bar, argues that the Agreement is ineffective to give rise to specific performance, because it (purportedly) provides "mere guidelines to users." (Mem. 16 (citing *Donohue*, 871 F. Supp. 2d at 931).) Thus, the requirements for pleading an alternative claim are met. *See also Precisely Software Inc. v. Loqate Inc.*, No. 22-cv-00552-BLF, 2022 U.S. Dist. LEXIS 169177, at *6-8 (N.D. Cal. Sep. 19, 2022) ("Defendant suggests that Plaintiff may not pursue its equitable quasi-contract claim because Plaintiff has not pled that the underlying Contract is invalid or unenforceable. Mot. 7-8. However, Plaintiff has properly pled this equitable claim in the alternative, as it is entitled to do."); *cf. Supervalu, Inc. v. Wexford Underwriting Mgrs., Inc.*, 175 Cal. App. 4th 64, 79 (2009) (rejecting argument that existence of contract precludes relief outside the contract).

## VI.     The First Amended Complaint Properly Alleges a Claim for Conversion.

As YouTube acknowledges, the elements of a claim for conversion are Mercola's ownership of its videos or right to possess them at the time of conversion, YouTube's conversion by wrongful

act, and damages. (Mem. 19 (citing *Spates v. Dameron Hosp. Ass'n*, 114 Cal. App. 4th 208, 221 (2003).) YouTube does not dispute that those elements are properly pleaded in FAC ¶¶ 111-13. Instead, YouTube argues that the claim must fail because "YouTube was under no obligation to provide Mercola access to [its] content." (Mem. 19.)[16] YouTube's argument fails:

**First**, although YouTube refers back to its argument regarding "Removal of Content By YouTube" (Mem. 19 (citing Mem. 7-8)), that provision deals with take down or removal of content from the platform, *i.e.*, discontinuance making it unavailable for public view on YouTube. *See supra*, Part I. The provision says nothing about blocking Mercola from accessing or removing its own content, which the Agreement expressly sanctions: "You may remove your Content from the Service at any time" and "If you do not agree to the modified terms, you should remove any Content you have uploaded and discontinue your use of the Service." (*See id.*)

**Second**, YouTube refers to a separate provision of the Agreement that, according to YouTube, states: "YouTube may retain . . . videos that have been removed or deleted." (Mem. 19 (citing Lerner Decl. Ex. A).) That is an example of selective editing that neither provides the relevant contractual context nor fits the facts alleged in this case. As demonstrated *supra*, Section I.A.1, that provision refers to copies retained by YouTube "after *you* remove or delete your Content" (emphasis added)— that is, after Mercola removes its own content. The provision does not apply here, because YouTube is **denying** Mercola the contractually guaranteed opportunity to remove its own content. Tellingly, the provision deals with YouTube retaining "server *copies*" of videos that Mercola has removed or deleted. (2021 Terms of Service (emphasis added).) But as alleged in the FAC, YouTube is

---

[16] YouTube cites *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 792 (N.D. Cal. 2021) (Chen, J.), for its contract-based argument. (Mem. 19.) That does not make sense. Even if *King* were not about an entirely different social media platform with an entirely different user agreement, the facts would not fit this case. The *King* plaintiff attempted to allege that Facebook had an obligation to retain content for its users. *See id.* at 787 ("Ms. King has not pointed to any provision in the Terms of Service that suggests Facebook would not destroy content (or, conversely, that Facebook had an obligation to retain content)."). Here, the argument is that YouTube (which does not deny holding Mercola's content) is blocking Mercola's contractual right to remove that content.

wrongfully denying Mercola access to the original content, of which Mercola has no "other" copy. (*E.g.*, FAC ¶¶ 30, 113, 114.).

## VII.    Communications Decency Act Section 230 Is Inapplicable to This Action.

YouTube ends its brief with a halfhearted assertion that Section 230(c) of the Communications Decency Act, 47 U.S.C. § 230, bars Mercola's claims. It does not.

*First*, YouTube's argument runs counter to the very words of Section 230:

**(c)     Protection for "Good Samaritan" blocking and screening of offensive material.**
> **(1)** Treatment of publisher or speaker. No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

47 U.S.C. § 230(c)(1). This provision grants internet service providers immunity from liability for publishing false or defamatory material so long as the information was provided by another party. *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003). Mercola does not seek to hold YouTube liable for the act of publishing Mercola's own (or any third-party user's) content. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009) (noting that Section 230(c)(1) preclusion covers attempt to hold defendant liable for act of publishing). Instead, Mercola seeks to hold YouTube liable for its breach of the Agreement.

*Second*, YouTube's argument runs counter to the purpose of Section 230, which was enacted to promote free speech on the internet by protecting "Internet intermediaries" from ***tort*** liability when they accept and publish third-party content:

> We observed, "the terms of section 230(c)(1) . . . reflect the intent to promote active screening by service providers of online content provided by others. Congress implemented its intent . . . by broadly shielding ***all*** providers from liability for 'publishing' information received from third parties. Congress contemplated self-regulation, rather than regulation compelled at the sword point of tort liability." [*Barrett v. Rosenthal*, 40 Cal. 4th 33, 53 (2006) (footnote omitted).] Later, we reiterated that section 230 confers "blanket immunity from tort liability for online republication of third party content." (*Barrett*, at p. 57.)

*Hassell v. Bird*, 5 Cal. 5th 522, 539 (2018); *see also id.* at 532; *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 24-25 (2021) (citing *Hassell* regarding Section 230's "intent to shield Internet intermediaries

from the burdens associated with defending against state law claims that treat them as the publisher or speaker of third party content").[17] Mercola's case concerns neither tort liability nor an attempt to make YouTube accountable for publishing Mercola's videos.[18]

**Third**, Ninth Circuit precedent specifically holds (in the case cited by YouTube (Mem. 20-21)) that Section 230 does ***not*** apply to a contract case like this:

> In a promissory estoppel case, as in any other contract case, the duty the defendant allegedly violated springs from a contract—an enforceable promise—not from any non-contractual conduct or capacity of the defendant. *See GTE Corp.*, 347 F.3d at 662 ("Maybe [the] plaintiffs would have a better argument that, ***by its contracts*** . . . , [the defendant] assumed a duty to protect them."). Barnes does not seek to hold Yahoo liable as a publisher or speaker of third-party content, but rather as the counter-party to a contract, as a promisor who has breached.

*Barnes*, 570 F.3d at 1107. YouTube attempts to distinguish *Barnes* on the grounds that it "did not involve a challenge to an Internet platform's general policies for content moderation." (Mem. 20.) ***But neither does this contract case.*** YouTube can enact whatever "content moderation" policies it wishes. But it cannot act in bad faith and breach the terms of its own Agreement. *See also Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1199 (N.D. Cal. 2009) (Fogel, J.) (Mem. 21) (rejecting user's argument that she was third-party beneficiary of Google's advertising terms and conditions).

---

[17] Notwithstanding YouTube's broader characterization (Mem. 21), Section 230 was applied in *Murphy* because "the gravamen of each of [the plaintiff's] causes of action concerns Twitter's editorial decisions not to publish content—as reflected by the fact that she alleges no specific injury from the alleged notice and retroactivity violations but complains instead of the harm caused by Twitter's ban on her and others' free speech rights." *Murphy*, 60 Cal. App. 5th at 30 n.6. That is, so to speak, the opposite of this case, where Mercola asserts that it suffered, and continues to suffer, specific and well-defined damages resulting from the inability to access its own content.

[18] None of the authorities cited by YouTube (Mem. 20) involves an attempt to hold a defendant liable for violation of its own voluntarily issued terms and conditions; YouTube cites cases of a third party trying to hold a service provider for the effects of speech on the platform. *See Lewis v. Google LLC*, 461 F. Supp. 3d 938 (N.D. Cal. 2020) (Kim, J.), *aff'd*, 851 F. App'x 723 (9th Cir. 2021); *Ebeid v. Facebook, Inc.*, No. 18-cv-07030-PJH, 2019 U.S. Dist. LEXIS 78876 (N.D. Cal. 2019); *Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094-95 (N.D. Cal. 2015) (Koh, J.), *aff'd*, 697 F. App'x 526 (9th Cir. 2017) (mem. 20).

23

1

## <u>CONCLUSION</u>

2

For all the foregoing reasons, Plaintiffs Mercola.com, LLC and Dr. Joseph Mercola request

3

that Defendants' Motion to Dismiss be denied *in toto*. In the event the Court is inclined to grant any

4

portion of the Motion to Dismiss, Plaintiffs request leave to amend.

5

6

Dated:  March 10, 2022                                    Respectfully submitted,

7

**RICHMAN LAW & POLICY**

8

*/s/ P. Renée Wicklund*

9

By:    _____

10

P. Renée Wicklund

11

**JW HOWARD/ ATTORNEYS, LTD.**
JOHN W. HOWARD

12

MICHELLE V. VOLK
ALYSSA P. MALCHIODI

13

14

*Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

     I hereby certify that on March 10, 2023, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

Dated: March 10, 2023

By: */s/ P. Renée Wicklund*
P. Renée Wicklund

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS