1   JOSHUA H. LERNER
    CA Bar No. 220755
2   joshua.lerner@wilmerhale.com
3   WILMER CUTLER PICKERING
      HALE AND DORR LLP
4   One Front Street, Suite 3500
    San Francisco, CA 94111
5   Telephone: (628) 235-1124

6   ARI HOLTZBLATT (*pro hac vice*)
7   ari.holtzblatt@wilmerhale.com
    WILMER CUTLER PICKERING
8     HALE AND DORR LLP
    2100 Pennsylvania Avenue, NW
9   Washington, D.C. 20037
    Telephone: (202) 663-6000
10

11  ***Attorneys for Defendants***
    ***YouTube, LLC, Google LLC,***
12  ***and Alphabet Inc.***

13                UNITED STATES DISTRICT COURT
14                NORTHERN DISTRICT OF CALIFORNIA
                  SAN FRANCISCO DIVISION
15

16  MERCOLA.COM, LLC and Dr. JOSEPH     Case No.  3:22-cv-05567-LB
    MERCOLA,
17              Plaintiffs,
                                         **DEFENDANTS' REPLY IN SUPPORT
18       v.                              OF MOTION TO DISMISS**

19  YOUTUBE, LLC, GOOGLE LLC, and        Hearing Date: May 18, 2023
20  ALPHABET INC.,                       Courtroom: Courtroom B
                                         Time: 9:30 a.m.
21              Defendants.              Judge: Hon. Laurel Beeler

22

23

24

25

26

27

28

1

**<u>TABLE OF CONTENTS</u>**

I.      The Opposition Confirms Mercola's Contract Claims Should Be Dismissed....................1

        A.      No Provision Overrides YouTube's Right To Cease "Host[ing]" Content .............1

                i.      Mercola Fails To Allege Breach Based On A Purported Lack Of
                        Opportunity To Remove Content From YouTube (Count I) .......................1

                ii.     Mercola Fails To Allege Breach Of The Three Strikes And Vaccine
                        Misinformation Policy (Count II) ................................................................5

        B.      Mercola Fails To Allege Injury Or Entitlement To Any Remedy From Breach .....7

                i.      Mercola Nowhere Plausibly Alleges Injury From Losing Access To His
                        Videos ........................................................................................................8

                ii.     The Liability Bar Forecloses Monetary Relief ............................................9

                iii.    Mercola Is Not Entitled To Specific Performance (Count IV) .................10

II.     The Complaint Fails To Allege Breach Of the Implied Covenant of Good Faith and
        Fair Dealing (Count III) ...............................................................................................11

III.    The Complaint Fails To Allege Unjust Enrichment (Count V) .........................................13

IV.     The Complaint Fails To Allege A Conversion Claim (Count VI) .....................................13

V       Mercola's Claims Are Barred By Section 230 .................................................................14

CONCLUSION...........................................................................................................................15

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Cases**

4

*Apple Inc. v. Allan & Assoc. Ltd.*,
5
    445 F. Supp. 3d 42 (N.D. Cal. 2020) .................................................................................5, 8

6

*Armstrong-Harris v. Wells Fargo Bank, N.A.*,
    2022 WL 3348426 (N.D. Cal. Aug. 12, 2022) ......................................................................14

7

*Ashcroft v. Iqbal*,
8
    556 U.S. 662 (2009).................................................................................................................9, 13

9

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) ...........................................................................................14, 15

10

*Barney v. Aetna Cas. & Sur. Co.*,
11
    185 Cal. App. 3d 966 (1986) .................................................................................................11

12

*Brodsky v. Apple Inc.*,
13
    445 F. Supp. 3d 110 (N.D. Cal. 2020) .................................................................................13

14

*Chen v. PayPal, Inc.*,
    61 Cal. App. 559 (2021) .........................................................................................................7

15

*Darnaa, LLC v. Google LLC*,
16
    756 F. App'x 674 (9th Cir. 2018) ..........................................................................................13

17

*Flintkote Co. v. Gen. Acc. Assur. Co.*,
18
    410 F. Supp. 2d 875 (N.D. Cal. 2006) ...................................................................................2

19

*Flintkote Co. v. Gen. Acc. Assur. Co. of Canada*,
    2006 WL 13077 (N.D. Cal. Jan. 3, 2006) ..............................................................................2

20

*Gabana Gulf Distribution, Ltd. v. GAP Int'l Sales, Inc.*,
21
    2008 WL 111223 (N.D. Cal. Jan. 9, 2008) ...........................................................................7

22

*King v. Facebook, Inc.*,
23
    572 F. Supp. 3d 776 (N.D. Cal. 2021) .........................................................................3, 8, 14

24

*Lewis v. Google LLC*,
    461 F. Supp. 3d 938 (N.D. Cal. 2020) .............................................................................12, 15

25

*Lewis v. YouTube, LLC*,
26
    244 Cal. App. 4th 118 (2015) .................................................................................2, 3, 9, 10

27

*Mishiyev v. Alphabet, Inc.*,
    444 F. Supp. 3d 1154 (N.D. Cal. 2020) .................................................................................2

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Moss Dev. Co. v. Geary*,
    41 Cal. App. 3d 1 (1974) .................................................................................9

*Murphy v. Twitter, Inc.*,
    60 Cal. App. 5th 12 (2021) ........................................................................15, 16

*O'Handley v. Weber*,
    62 F.4th 1145 (9th Cir. 2023) .......................................................................12

*Prager University v. Google LLC*,
    85 Cal. App. 5th 1022 (2022) .................................................................6, 12, 15

*United States v. Prasad*,
    18 F.4th 313 (9th Cir. 2021) ...........................................................................2

*QuickLogic Corp. v. Konda Techs., Inc.*,
    2022 WL 3046751 (N.D. Cal. Aug. 2, 2022) ...............................................11, 12

*Tsai v. Wang*,
    2017 WL 2587929 (N.D. Cal. June 14, 2017) ....................................................13

*Zepeda v. PayPal, Inc.*,
    777 F. Supp. 2d 1215 (N.D. Cal. 2011) ........................................................6, 7

**Statutes**

47 U.S.C. §230...............................................................................14, 15, 16

**Other Authorities**

Mercola, BitChute, https://www.bitchute.com/channel/ySITC1RcRsOS/ ....................................8

*Web Hosting*, Oxford English Dictionary (2023), https://tinyurl.com/mrx6b783 ..........................2

## I.     The Opposition Confirms Mercola's Contract Claims Should Be Dismissed

Mercola's Opposition attempts to salvage his breach of contract claims by recasting and narrowing the relief he seeks, but to no avail.  In his complaint, Mercola faulted YouTube for removing his YouTube Channel and demanded "ongoing use of the platform, its channel, and its account." Compl. ¶102 (Dkt. 21).  As YouTube explained, that theory fails because YouTube's Terms of Service ("Terms") expressly disclaim any obligation to "host or serve Content."  *See* Motion to Dismiss 3-4 ("MTD") (Dkt. 25).  The Opposition concedes this point, admitting that YouTube has the "right to regulate, refuse to display, or remove content." Opp. 6.  And, in an about face, the Opposition abandons the relief sought in the complaint, claiming that Mercola is not seeking reinstatement on either breach of contract claim. Opp. 6-7.  These concessions doom his contract claims as originally pled.

Mercola nonetheless insists that an alternative theory can preserve his contract claims—namely, that YouTube purportedly breached the Terms by eliminating his *access* to the removed content.  But his "access" theory fails for the same reasons as his "removal" theory.  *First*, the Terms expressly authorize YouTube to cease "hosting," and therefore to cease providing access to, user content at any time.  None of the provisions that Mercola invokes provide otherwise. *Second*, the Liability Bar in the Terms forecloses monetary relief for "unavailability of any content," and Mercola has not plausibly alleged he is entitled to specific performance.  Mercola thus cannot establish that he is entitled to any remedy on his new loss-of-access theory.

### A.     No Provision Overrides YouTube's Right To Cease "Host[ing]" Content

#### i.     Mercola Fails To Allege Breach Based On A Purported Lack Of Opportunity To Remove Content From YouTube (Count I)

As YouTube explained, both of Mercola's breach of contract claims fail because the Terms—in a provision titled "Content on the Service"—expressly disclaim any obligation for YouTube to "host or serve Content." Lerner Decl. Ex. A.  To the extent Mercola addresses this provision at all, he claims that it governs only YouTube's right to remove content so that it is not visible to others—not a user's access to their own content.  Opp. 5-7.  YouTube's disclaimer, however, plainly encompasses both.  The operative phrase says YouTube need not "*host* or serve Content." Lerner Decl. Ex. A.  (emphasis added).  Hosting is "the activity or business of providing

space to store websites [and] *access* to them." *Web Hosting*, Oxford English Dictionary (2023), https://tinyurl.com/mrx6b783 (emphasis added); *see Flintkote Co. v. Gen. Acc. Assur. Co.*, 410 F. Supp. 2d 875, 887 (N.D. Cal. 2006) ("In determining the plain meaning of language in a contract, a court may look to a 'general' dictionary definition to aid in its analysis."). YouTube's disclaimer therefore relieves it of any obligation to provide access to Mercola's content. Because YouTube was "given the right to do what [it] did by the express provisions of the contract there can be no breach." *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1159 (N.D. Cal. 2020).

Other provisions in the Terms confirm that Mercola's access can be revoked at YouTube's discretion. *See Flintkote Co. v. Gen. Acc. Assur. Co. of Canada*, 2006 WL 13077, at *3 (N.D. Cal. Jan. 3, 2006) (contract term "must be construed in the context of the instrument as a whole"). For example, a provision governing "Terminations and Suspensions by YouTube" states, "YouTube may suspend or terminate *your access, your Google account, or your Google account's access to all or part of the Service* if (a) you materially or repeatedly breach this Agreement ... or (c) we believe there has been conduct that creates (or could create) ... harm to any user." Lerner Decl. Ex. A (emphasis added). And when the Terms afford users a right to remove content upon termination, they say so expressly. The "Account Suspension & Termination" section explains that "Where YouTube is terminating your access for Service changes, where reasonably possible, *you will be provided with sufficient time to export your Content from the Service*." Lerner Decl. Ex. A (emphasis added). None of the provisions on which Mercola relies contain comparable language promising "sufficient time to export your Content" before access is terminated. That silence confirms what the disclaimer already makes clear: YouTube is under no obligation to provide Mercola with the "right to remove" his content aside from a narrow circumstance ("Service changes") that the complaint does not allege is the basis for Mercola's termination. *United States v. Prasad*, 18 F.4th 313, 324 (9th Cir. 2021) ("Typically, under the presumption of consistent usage and material variation, a material change in terminology ... denotes a change in meaning.").

Case law likewise confirms that the Terms do not give Mercola a right to access (and remove) content from a terminated account. In *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118 (2015), the California Court of Appeal affirmed dismissal of a contract claim brought by a user

who sought restoration of videos she had posted prior to YouTube's termination and reinstatement of her account. In declining to restore access, the court explained that "there is no provision in the Terms of Service that requires YouTube to maintain particular content on the Service," and "nothing in the Terms of Service even suggest[s] that YouTube is a storage site for users' content." *Id.* at 126–127. Likewise, in *King v. Facebook, Inc.*, 572 F. Supp. 3d 776 (N.D. Cal. 2021), a court in this district dismissed a contract claim by a user who alleged that Facebook breached the terms of service by "destroying content associated with her account" when it disabled her account. *Id.* at 787. The court found no breach, explaining that "Ms. King has not pointed to any provision in the Terms of Service that suggests Facebook would not destroy content (or, conversely, that Facebook had an obligation to retain content)." *Id.* at 787-788. Even "the destruction of content, following the disabling of an account, does not injure a user's core contractual right – the right to use Facebook's social media platform." *Id. King* and *Lewis* further confirm that where, as here, the applicable terms of service grant a provider the right to terminate a user's account, that right includes terminating the user's ongoing access to the account's content, absent some express provision splitting off the right to access content from the right to maintain an account.

Mercola fails in trying to distinguish these authorities. He claims that *Lewis* is inapplicable because the plaintiff there sought different relief. Opp. 11-12. That is wrong. In addition to seeking restoration of "the view count [and] the comments" associated with videos, the user sought access to and restoration of "the videos themselves." *Lewis*, 244 Cal. App. 4th at 126-127. That is precisely what Mercola purports to seek here: access to the content YouTube removed. Mercola's attempt to distinguish *King* fails, too. He argues that the *King* plaintiff's claim that Facebook had an obligation "to retain content" is somehow distinct from his allegation that YouTube breached by "blocking Mercola's contractual right to remove" content. Opp. 21 n.16. This is a distinction without a difference: Mercola cannot claim a right to remove content that YouTube has no duty to retain for him. A "right to remove" thus necessarily imposes an obligation to retain content—a obligation that the Terms expressly disclaim.

Against the weight of this authority, Mercola points to two provisions, which he claims provide him a right to remove content from his terminated account. But neither provision can be

read to vitiate YouTube's expressly reserved right to cease hosting—or providing Mercola access to—his content.

***Modifying This Agreement.*** As he did in his complaint, Mercola principally invokes (Opp. 5-8) a provision titled "Modifying this Agreement," which states: "We may modify this Agreement, for example, to reflect changes to our Service or for legal, regulatory, or security reasons. YouTube will provide reasonable advance notice of any material modifications to this Agreement and the opportunity to review them. … If you do not agree to the modified terms, you should remove any Content you have uploaded and discontinue your use of the Service." Compl. ¶38. As is evident from its title, however, this provision has nothing to do with YouTube's right to cease hosting content or Mercola's right to access that content. In stark contrast to the "Account Suspension & Termination" section, *see supra* p. 2, the "Modifying this Agreement" provision nowhere pledges to "provide time to export your Content." Instead, the language merely instructs users to "remove any Content you have uploaded and discontinue your use of the Service" if he or she "do[es] not agree" to a modification. This language thus informs a user how to demonstrate a lack of assent to some new term; it does not create a right to remove content from a terminated account. And it certainly does not negate the right of YouTube—expressly reserved elsewhere in the Terms—to cease hosting and thereby providing access to user content at any time. Lerner Decl. Ex. A ("Content on the Service").

Mercola's reliance on the "Modifying this Agreement" provision fails for another, independent reason, which the Opposition ignores. As YouTube explained (MTD 13), the vaccine misinformation policy was not a "material modification" that required advance notice because it merely elaborated on YouTube's longstanding prohibition on medical misinformation, including "content that promotes harmful remedies, such as saying drinking turpentine can cure diseases." Lerner Decl. Ex. B. Mercola claims otherwise because he was suspended shortly after YouTube published the vaccine misinformation policy. Opp. 5 n.6. But the timing of Mercola's suspension says nothing about whether the vaccine misinformation policy merely elaborated on YouTube's long-standing prohibition on medical misinformation, including "content that promotes harmful

1   remedies." Lerner Decl. Ex. B. YouTube's articulation of one example of its existing

2   misinformation policies cannot amount to a material modification.

3       ***Removing Your Content.*** Mercola also claims for the first time in his Opposition that a

4   different provision, "Removing Your Content," granted him the "right to remove" content prior to

5   having his account terminated. Opp. 6-7. But the complaint does not cite this provision or allege

6   that YouTube breached it. Mercola cannot introduce new theories in his Opposition that were not

7   alleged in his complaint. *See Apple Inc. v. Allan & Assoc. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal.

8   2020). In any event, that provision does not help him. It provides: "You may remove your Content

9   from the Service at any time." This provision too nowhere promises to "provide time to export

10  your Content" prior to account termination, as in the provision concerning "Service changes." *See*

11  *supra* p. 2. Nor does it say anything that might nullify YouTube's right—set forth elsewhere in

12  the Terms—to cease hosting (and thus cease providing access to) a user's content at YouTube's

13  discretion. *See supra* p. 2. Instead, the "Removing Your Content" provision simply allows users

14  to remove content that YouTube is *otherwise still hosting*, thereby ensuring that YouTube will not

15  display content that a user wishes to remove. The provision is irrelevant here, where YouTube is

16  not seeking to keep up content that Mercola would otherwise prefer to take down.

17      In short, YouTube does not seek some unfettered "right to breach any provision" of the

18  Terms, as Mercola erroneously claims (Opp. 8), but instead to give proper effect to all provisions

19  in the Terms as written. The "Modifying this Agreement" provision instructs users how to decline

20  consent to material modifications; it does not create a right for users to remove content from a

21  terminated account. And the "Removing Your Content" provision allows users to remove content

22  that YouTube is hosting; it does not force YouTube to keep hosting content that it has chosen to

23  remove solely so that a user can remove it. Neither of these provisions overrides YouTube's

24  expressly reserved right to cease hosting and to thus cease providing access to user content.

25      **ii.    Mercola Fails To Allege Breach Of The Three Strikes And Vaccine Misinformation Policy (Count II)**

26      Mercola fares no better in attempting to manufacture a breach based on YouTube's three

27  strikes policy for two reasons. First, nothing in the Community Guidelines interferes with

28

YouTube's expressly reserved right to cease hosting content at any time.  Second, Mercola did not plausibly allege that YouTube's conduct violated the three strikes policy.

Contrary to Mercola's argument (Opp. 13), neither the three strikes policy nor any of the other Community Guidelines obligated YouTube to provide Mercola with "notice and opportunity to cure breaches" before termination.  As YouTube explained (MTD 9-10), Mercola's attempt to leverage the three strikes policy runs headlong into *Prager University v. Google LLC*, 85 Cal. App. 5th 1022 (2022), which held that YouTube's Community Guidelines "in no way purport to bind [YouTube] to publish any given video, or to remove a video only for violation of those guidelines," and that the Community Guidelines cannot "limit [YouTube's] express reservation of rights." *Id.* at 1037-1038.  Mercola makes no attempt to distinguish *Prager* or any of the many other cases YouTube cites in support of this point.  Nor does he otherwise explain how language describing how YouTube enforces the Community Guidelines can vitiate YouTube's express disclaimer that it is "under no obligation to host or serve Content," Lerner Decl. Ex. A, or its warning to users that it may "remove content for reasons other than Community Guidelines violations," Lerner Decl. Ex. D.  This failure is reason alone to dismiss Count II.

Mercola's reliance on the three strikes policy is unavailing for an independently sufficient reason:  even if the three strikes policy imposed any obligations on YouTube (it does not), Mercola failed to allege any conduct that would violate that policy.  Mercola concedes that even if binding on YouTube, the Community Guidelines would still grant YouTube discretion to suspend an account immediately (that is, without three strikes) if YouTube finds that the user's "channel is dedicated to a policy violation," or after a single case of "severe abuse."  Opp. 13-14.  Therefore, to allege breach, Mercola would have to allege not only that YouTube suspended him without affording him three strikes, but that YouTube did not permissibly suspend Mercola based on either the "severe abuse" or "dedicated to a policy violation" exceptions.  *See Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1220 (N.D. Cal. 2011); MTD 10-11. The Opposition offers no convincing explanation for the complaint's failure to address either of these bases for suspension.

With respect to the "dedicated to a policy violation" exception, the Opposition says nothing at all.  Mercola's continued failure to address this exception is reason alone to dismiss Count II.

1    *See Zepeda*, 777 F. Supp. 2d at 1220.

2         As for "severe abuse," Mercola wrongly claims that a trier of fact would have to determine

3 whether YouTube correctly applied that exception. Opp. 14. That is not correct. As the Terms

4 make clear, determining whether content violates its Community Guidelines rests entirely within

5 YouTube's discretion. *See* Lerner Decl. Ex. A ("If we reasonably believe that any Content is in

6 breach of this Agreement or may cause harm … we may remove or take down that Content *in our*

7 *discretion*." (emphasis added)). When a contract assigns a determination to the defendant's

8 discretion, a plaintiff may overcome a motion to dismiss only by plausibly alleging that the

9 defendant acted in bad faith. *Chen v. PayPal, Inc.*, 61 Cal. App. 559, 572 (2021) (sustaining

10 demurrer of contract claim for failure to allege breach when contract left decision to PayPal's "sole

11 discretion" and the plaintiff failed to allege bad faith). In such circumstances, the defendant need

12 not be "correct in its rationale," nor does it matter whether counterparties "agree with [that]

13 determination"; the defendant need only have acted in an "non-arbitrary manner." *Id.* The

14 complaint here alleges no facts evincing arbitrariness in YouTube's decision and thus no bad faith

15 in exercising its discretion to suspend Mercola's account for "severe abuse."

16         Mercola's citation to *Gabana Gulf Distribution, Ltd. v. GAP Int'l Sales, Inc.*, 2008 WL

17 111223, at *7 (N.D. Cal. Jan. 9, 2008) is inapposite. There, the court held that there was a triable

18 issue as to whether a manufacturer exercised in good faith its "sole discretion" to deny a

19 distributor's proposal for new retail locations based on criteria other than the meritoriousness of

20 the proposal because the parties' contract was silent as to whether the manufacturer's discretion

21 extended that far. By contrast, there is no ambiguity about whether YouTube has sole discretion

22 to decide how to apply the Community Guidelines—including the severe abuse exception.

23 *Gabana* therefore does not help Mercola surpass YouTube's motion to dismiss.

24      **B.**     **Mercola Fails To Allege Injury Or Entitlement To Any Remedy From Breach**

25         Mercola's breach of contract claims require dismissal for the additional reason that he fails

26 to plausibly allege he suffered an injury or to establish entitlement to any remedy from the alleged

27 breach—essential elements of a contract claim. Having abandoned his claim to reinstatement,

28 Mercola's sole remaining theory of breach is "loss of access" to his videos. But the complaint has

not plausibly alleged that he suffered any injury from being unable to download his videos from YouTube.  Aside from this threshold defect, Mercola fails to establish that he is entitled to any remedy—i.e., neither monetary nor equitable relief—for "loss of access" to his videos.  *See King*, 572 F. Supp. 3d at 790 (dismissing contract claim for failure to show entitlement to any remedy).

       **i.**       **Mercola Nowhere Plausibly Alleges Injury From Losing Access To His Videos[1]**

As explained above, the Opposition abandons any claim for reinstatement and instead seeks only access to Mercola's terminated account, purportedly so he can retrieve his videos.  *See supra* Section I.A.  This newly narrowed theory, however, suffers from a fatal defect:  the complaint nowhere plausibly alleges that Mercola suffered any injury from being unable to download the videos.  Mercola would have this Court believe that he was injured because he lost "access to the only currently known versions of Mercola's professional produced video content."  Opp. 7 n.8.  But the complaint notably does not make that allegation.  Rather it alleges only that "Mercola was given no opportunity to move its 15+ years of video content," and that "YouTube … denied Mercola … any opportunity to remove its own content."  Compl.  ¶¶30, 42; *see also id.* at ¶¶101, 113, 114 (failing to allege the nonexistence of other copies).  Mercola cannot cure that pleading gap with attorney argument in his opposition.  *See Apple*, 445 F. Supp. 3d at 59. [2]  And without alleging that he has no replacement copies, Mercola cannot establish injury from losing access to any duplicates that might have been posted to YouTube.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (facts "merely consistent with a defendant's liability" stop "short of the line between possibility and plausibility of entitlement to relief").  Even with such allegations, Mercola would not be entitled to any relief.  *See supra* pp. 1-6.

---

[1] YouTube did not raise this argument in its Motion to Dismiss because Mercola's complaint more broadly alleged injury based on Mercola's account termination (and desire for reinstatement).  This reply is therefore the first opportunity for YouTube to challenge Mercola's narrower theory that he was purportedly injured solely by losing access to the video content.

[2] There may be good reasons why Mercola did not plead that he has no replacement copies.  A cursory search of video-hosting sites like BitChute, Facebook, and Instagram brings up hundreds of videos produced prior to September 2021 and attributed to Mercola.  *See, e.g.*, Mercola, BitChute, https://www.bitchute.com/channel/ySITC1RcRsOS/.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### ii.     The Liability Bar Forecloses Monetary Relief

As explained in YouTube's Motion to Dismiss (pp. 14-15), the Liability Bar encompasses both of Mercola's contract claims because both challenge Mercola's "loss … of data" from "the removal or unavailability of any content."  Mercola's contrary arguments are unavailing.

Mercola primarily asserts—without further explanation—that the Liability Bar's prohibition on recovering damages caused by "the removal or unavailability of any content" refers only to actions that challenge "whether YouTube users can see Mercola's videos."  Opp. 11.  But the plain language in no way supports such a narrow reading, which is most naturally read to encompass claims based on the unavailability of any content to anyone.   After all, the operative phrase refers to "the removal or unavailability of any content" *full stop*—not "the removal or unavailability of any content *to third-party viewers*."  Mercola cannot read in a qualification that does not exist in the plain text of the contract.  *See Moss Dev. Co. v. Geary*, 41 Cal. App. 3d 1, 9 (1974) ("[I]t is not a court's prerogative to alter…[or to] add a term to a contract about which the agreement is silent.").  Moreover, the Liability Bar waives damages for the "loss or corruption of data … caused by … the removal or unavailability of any content."  Lerner Decl. Ex. A.  Unavailability of content to *other* YouTube users would not cause anyone to suffer any "loss … of data."  For this language to mean anything, it must therefore encompass a user's loss of access to their own content.[3]

Equally unavailing is Mercola's argument that the Liability Bar caps damages at $500 per claim rather than altogether foreclosing liability.  Opp. 12.  The plain language of the Liability Bar precludes that interpretation.  The Liability Bar is comprised of two distinct sections.  The first section states, "YouTube … will not be responsible for any loss … caused by" the seven enumerated categories.  Lerner Decl. Ex. A.  This section forecloses *all* monetary liability—rather

---

[3] Mercola's attempt to distinguish *Lewis* is unpersuasive.  Opp. 12.  As discussed, *supra* pp. 2-3, the plaintiff in that case also challenged YouTube's failure to restore the plaintiff's access to the videos themselves.  That is precisely the relief Mercola seeks here.  And Mercola's bald assertion that the Limitation of Liability provision in *Lewis* was "different" does not help him.  The *Lewis* court dismissed the plaintiff's claim for failure to restore deleted videos because the limitation of liability barred recovery for "omissions in any content."  244 Cal. App. 4th at 125.  The Liability Bar here likewise (and even more clearly) bars claims based on the "unavailability" of any content.

than merely capping damages at a specified amount—for those enumerated actions.  The second part of the Liability Bar then explains that "YouTube and its affiliates' total liability for any claims arising from or relating to the service is limited to … $500."  Lerner Decl. Ex. A.  This section caps damages stemming from *all* other actions not included in the enumerated list.

### iii.    Mercola Is Not Entitled To Specific Performance (Count IV)

Mercola's claim for specific performance likewise fails.  After YouTube explained that compelling Mercola's reinstatement would violate YouTube's First Amendment rights, Mercola abandoned that relief and instead now seeks an injunction enabling "access to the platform to get its video content back."  Opp. 17.  That gambit fails.

First, the (new) specific performance Mercola seeks is not "substantially similar" to anything promised in the Terms.  Mercola has no answer to YouTube's argument that "nothing in the Terms of Service even suggest[s] that YouTube is a storage site for users' content."  *Lewis*, 244 Cal. App. 4th at 127.  He claims that the "Modifying this Agreement" provision promises users a right to "have access to the platform to get [their] video content back."  Opp. 17-18.  But as explained, *supra* p. 4, that provision merely indicates how a user can indicate a lack of assent to any material modification.  Nothing in that provision guarantees a right to remove content from a terminated account—let alone one that would override the Terms' express disclaimer of any obligation for YouTube to host (and thereby provide access to) Mercola's content.  The performance Mercola seeks is therefore not "substantially similar" to that promised by the Terms; to the contrary, it would vitiate YouTube's expressly reserved rights.

Second, the "Modifying this Agreement" provision is also not sufficiently definite to make the precise act which is to be done clearly ascertainable.  Mercola asks this Court to command YouTube to provide the "notice and opportunity" purportedly called for by that provision.  Opp. 18.  Although the Modifying this Agreement provision calls for "advance notice" of any material modification, Mercola does not explain how YouTube can provide him advance notice of a policy of which he is already aware and that is already in effect.  (And in any event, the vaccine misinformation policy was not a "material modification" requiring notice.  *Supra* p. 4.)  Nor does Mercola explain how YouTube can afford him an opportunity to "discontinue [his] use of the

1 Service" when he has already been terminated.  To the extent the Modifying this Agreement

2 provision offers any opportunity to remove content, it does so before modified terms are effective;

3 it says nothing about what an opportunity to remove content would look like after termination.

4 Finally, contrary to Mercola's assertion (Opp. 19), YouTube nowhere claims that the

5 Terms are not a contract.  As YouTube explained (MTD 16), the Modifying this Agreement

6 provision instructs users to manifest their lack of assent to modified terms by "remov[ing] any

7 Content you have uploaded and discontinu[ing] your use of the Service."  A court cannot transform

8 those guidelines into a remedy that vitiates YouTube's expressly reserved rights in the Terms.

9 ## II.   The Complaint Fails To Allege Breach Of the Implied Covenant of Good Faith and Fair Dealing (Count III)

10 The Opposition offers no persuasive response to the defects in Mercola's implied covenant

11 claim.  Indeed, Mercola's own authorities confirm that these defects are fatal.  As Mercola

12 concedes, "in most cases, a claim for breach of the implied covenant can add nothing to a claim

13 for breach of contract."  Opp. 16 (citing *QuickLogic Corp. v. Konda Techs., Inc*., 2022 WL

14 3046751, at *8 (N.D. Cal. Aug. 2, 2022)).  That is because if a plaintiff seeks to "impose limits

15 beyond those to which the parties actually agreed, the [implied covenant] claim is invalid."

16 *Quicklogic*, 2022 WL 3046751, at *8.  And "[t]o the extent the implied covenant claim seeks

17 simply to invoke terms to which the parties did agree, it is superfluous" of the contract claim.  *Id.*

18 Thus, an implied covenant claim is viable in the rare circumstance where "the plaintiff alleges that

19 the defendant acted in bad faith to frustrate the contract's benefits," *id.*—such as when an insurer

20 enters into a settlement with a third-party that extinguishes the insured's right to a counterclaim

21 against the third-party.  *Barney v. Aetna Cas. & Sur. Co.*, 185 Cal. App. 3d 966, 981 (1986).

22 Mercola alleges nothing like that.  Mercola's sole argument is that YouTube "concealed"

23 changes to its Community Guidelines to "prevent Mercola" from "complying with revised

24 Community Guidelines" and "removing its video content from the platform."  Opp. 16.  But neither

25 of these are benefits afforded by the Terms.  Nowhere does YouTube promise it will provide access

26 to user content so long as there are no violations of the Community Guidelines.  To the contrary,

27 YouTube expressly disclaims any obligation to "host or serve Content," and the Terms put users

28

on notice that it may "remove content for reasons other than Community Guidelines violations." Lerner Decl. Exs. A, D; *see Prager* 85 Cal. App. 5th at 1039 (a plaintiff may not state an implied covenant claim against YouTube that would "impos[e] a duty … at odds with the express reservation of defendants' … discretion to remove[] … content."). So too with respect to a "right to remove content." As explained, *supra* pp. 1-3, the contract does not grant Mercola a right to remove content from a terminated account, and affords YouTube the right to cease hosting (and thereby providing access to) user content at any time. YouTube could not have acted in bad faith to frustrate benefits not even granted to Mercola. *See Quicklogic,* 2022 WL 3046751, at *8.

Furthermore, Mercola's claims of bad faith fall far short of the plausibility standard. Neither the complaint nor the Opposition explain why a bare allegation that YouTube worked with public health officials to develop a vaccine misinformation policy that applied to *all* users evinces an intent to deprive Mercola of an opportunity to comply with the vaccine misinformation policy, or to remove his content. *See e.g.*, *O'Handley v. Weber*, 62 F.4th 1145, 1159 (9th Cir. 2023) (finding "nothing illicit in [Twitter] seeking support from outside actors, including government officials, to achieve" its content moderation goals); *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 962 (N.D. Cal. 2020) (dismissing implied covenant claim despite allegations that YouTube removed content in concert with foreign governments). Likewise unavailing is Mercola's attempt to argue bad faith by claiming YouTube's "conceal[ed]" the vaccine misinformation policy from him to deprive him of the opportunity to comply with it. Opp. 16. The complaint alleges that YouTube announced the vaccine misinformation policy to all users through its blog post, and immediately began enforcing it. Compl. ¶26. And there is no allegation that YouTube selectively hid the policy from Mercola only. These allegations point to "an obvious alternative explanation": YouTube provided new guidance about how it would enforce its policies against medical misinformation and took steps to enforce those policies consistent with the guidance—against Mercola and all other users on the platform. *Iqbal*, 556 U.S. at 681-682. Against this "more likely explanation," bad faith is not a "plausible conclusion" that can survive a motion to dismiss. *Id.*

Finally, as YouTube explained (MTD 18), the Liability Bar separately bars Mercola's implied covenant claim. *See Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 677 (9th Cir. 2018).

1  As discussed, *supra* pp. 9-10, Mercola's attempts to evade the Liability Bar are unavailing.

2  **III.   The Complaint Fails To Allege Unjust Enrichment (Count V)**

3          Nowhere in his complaint or Opposition does Mercola allege the Terms are unenforceable

4  or invalid.  Yet "[c]ourts have repeatedly held that 'a plaintiff may not plead the existence of an

5  enforceable contract and simultaneously maintain a quasi-contract claim unless the plaintiff also

6  pleads facts suggesting that the contract may be unenforceable or invalid.'"  *Brodsky v. Apple Inc.*,

7  445 F. Supp. 3d 110, 133 (N.D. Cal. 2020) (collecting cases).  As YouTube explained, his unjust

8  enrichment claim fails for this reason alone.  MTD 18-19.

9          Mercola's argument (Opp. 19-20) that he is entitled to plead inconsistent claims misses the

10 point.  Although a plaintiff may assert at the pleadings stage "inconsistent claims alleging both the

11 existence and the absence of an enforceable contract," to maintain a claim for unjust enrichment,

12 a plaintiff must still "plead[] facts suggesting that the contract may be unenforceable or invalid."

13 *Tsai v. Wang*, 2017 WL 2587929, at *8 (N.D. Cal. June 14, 2017).  The complaint fails to do that,

14 and none of the cases Mercola cites (Opp. 20) purport to relieve him of that pleading obligation.

15         Equally unavailing is Mercola's attempt to revive his unjust enrichment claim by claiming

16 he has plausibly pled "actions not covered by the Agreement."  Opp. 20.  Again, Mercola's own

17 authorities demonstrate why.  In *Precisely Software Inc. v. Loqate Inc.*, 2022 WL 4348469, at *3

18 (2022), the court allowed a plaintiff to plead an unjust enrichment claim and a contract claim when

19 there were "no express provisions in the Contract" governing the benefit the defendant allegedly

20 unjustly retained.  By contrast, the Terms grant to YouTube the benefit Mercola alleges YouTube

21 unjustly retained: "unilateral access" to Mercola's content.  Compl. ¶108; *see also* ¶¶ 34, 105, 111-

22 112. As discussed, *supra* pp. 1-3, several provisions of the Terms confirm YouTube is under no

23 obligation to provide Mercola access to terminated content.[4]

24 **IV.   The Complaint Fails To Allege A Conversion Claim (Count VI)**

25         As YouTube explained (MTD 19), Mercola's conversion claim fails because Mercola has

---

[4] And, in any event, Mercola fails to allege any theory under which YouTube's "unilateral access" to his content—which YouTube has expressly sought to remove from its platform—benefits YouTube.  *See Armstrong-Harris v. Wells Fargo Bank, N.A.*, 2022 WL 3348426, at *5 (N.D. Cal. Aug. 12, 2022).

1  not plausibly alleged that YouTube committed a "wrongful act." YouTube's revocation of

2  Mercola's access cannot constitute a wrongful act when the Terms expressly state that YouTube

3  is under "no obligation to host … Content." Lerner Decl. Ex. A. The Opposition fails to address

4  the import of this provision entirely, which is reason alone to dismiss his conversion claim.

5      *King v. Facebook, Inc.*, which Mercola unsuccessfully attempts to distinguish, is directly

6  on point. There, a court dismissed a user's conversion claim premised on Facebook's failure to

7  retain her content because "Facebook was not under any obligation not to destroy (or to otherwise

8  retain) the content associated with her account." *King*, 572 F. Supp. 3d at 792. Mercola's

9  purported distinction between *King*'s "obligation to retain content" and his alleged "contractual

10  right to remove [] content" (Opp. 21 n.16) is irrelevant to his conversion claim. The core takeaway

11  from *King* applies with equal force here: there can be no wrongful act when a platform takes

12  enforcement action consistent with its terms of service, which is the case here.

13  **V.     Mercola's Claims Are Barred By Section 230**

14      Finally, Mercola's claims are barred by Section 230(c) of the Communications Decency

15  Act, 47 U.S.C. §230. Mercola does not contest and therefore concedes that Section 230 bars his

16  non-contractual claims. Mercola's breach of contract and implied covenant claims are likewise

17  barred by Section 230 because both challenge YouTube's decision to terminate his channel. That

18  decision involved "deciding whether to exclude material that third parties seek to post online," and

19  it is therefore "perforce immune under section 230." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102

20  (9th Cir. 2009). Mercola's contrary arguments are without merit.

21      *First*, Mercola is wrong that Section 230 provides immunity only from "tort liability" and

22  only when a platform "accept[s] and publish[es] third party content." (Opp. 21-22) As the Ninth

23  Circuit held in *Barnes*, Section 230 immunizes all publishing decisions; "it is immaterial whether

24  this decision comes in the form of deciding what to publish in the first place or what to remove

25  among the published material." 570 F.3d at 1102 n.8. Nor does Section 230 provide immunity

26  only from "tort" liability. Again, according to *Barnes*, "what matters is not the name of the cause

27  of action." 570 F.3d at 1101-1102. What matters is whether the cause of action seeks to impose

28  liability for "publishing conduct." *Id.* at 1101-1103. That is why courts have consistently applied

1

2

Section 230 both before and after *Barnes* to bar contract claims seeking to hold platforms liable for deciding to cease publishing third-party content. [5]  *See Murphy v. Twitter, Inc*., 60 Cal. App.

3

5th 12, 29 (2021) (collecting cases); *see also Prager*, 85 Cal. App. 5th at 1037.

4

5

6

7

8

9

10

11

12

13

14

*Second*, Mercola is wrong that *Barnes* removes all contract claims from Section 230(c)(1)'s reach.  As the California Court of Appeal explained in *Murphy*, "*Barnes* never suggested … that all contract or promissory estoppel claims survive CDA immunity."  *Murphy*, 60 Cal. App. 5th at 29.  Instead, *Barnes* excluded contract claims only where, as in *Barnes*, the defendant is alleged to have made a direct and particularized assurance specifically to the plaintiff—such as a "specific personal promise made by an employee to ensure specific content was removed." *Id.*  Mercola points to no such distinct and specific promise here. Mercola unsuccessfully attempts to distinguish *Murphy* on the basis that the complaint alleges damages resulting "from the inability to access [Mercola's] own content," rather than a decision "not to publish content."  Opp. 23 n.17.  That is a distinction without a difference.  Mercola's loss of access to his content is the direct consequence of YouTube's decision to remove his content and terminate his channel from its platform.

15

16

17

18

19

20

Likewise unavailing is Mercola's claim that his case does not involve a contractual challenge to YouTube's "general policies for content moderation"—a contract claim that, as explained, is not barred by Section 230 under *Barnes*.  *See Murphy*, 60 Cal. App. 5th at 29 (quoting *Barnes*, 570 F.3d at 1108).  To the contrary, he directly challenges YouTube's application of its general content moderation policies, including its vaccine misinformation and three-strikes policy. *See, e.g.*, Compl. ¶¶43-50; 83.  As in *Murphy*, therefore, Section 230(c)(1) bars Mercola's claims.

21

**CONCLUSION**

22

For the reasons stated, the Court should dismiss the complaint with prejudice.

23

24

25

26

27

28

[5] Mercola cherry-picks authorities YouTube cited in its Motion To Dismiss and claims none challenge a platform's "violation of its own voluntarily issued terms and conditions."  Opp. 23 n.18.  But several of the authorities YouTube cited and discussed held just that. *See, e.g.*, *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 950 (N.D. Cal. 2020) (challenging YouTube's Terms and "monetization Policies"); *Murphy*, 60 Cal. App. 5th at 29; *Prager*, 85 Cal. App. 5th at 1037.

1

2   Dated: April 10, 2023

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/   *Joshua H. Lerner*
JOSHUA H. LERNER
CA Bar No. 220755
joshua.lerner@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1124

ARI HOLTZBLATT (*pro hac vice*)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, D.C. 20037
Telephone: (202) 663-6000

***Attorneys for Defendants
YouTube, LLC, Google LLC, and
Alphabet Inc.***

### CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2023, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

Dated:    April 10, 2023                          By:    */s/ Joshua H. Lerner*
                                                                       JOSHUA H. LERNER