UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MERCOLA.COM, LLC and DR. JOSEPH MERCOLA,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC, YOUTUBE, LLC, ALPHABET INC., and DOES 1–10,<br><br>Defendants. | Case No. 3:22-cv-05567-LB<br><br>**ORDER DISMISSING COMPLAINT**<br><br>Re: ECF Nos. 25, 30 |

## INTRODUCTION

Defendant YouTube terminated plaintiff Joseph Mercola's YouTube channel for violating YouTube's Community Guidelines by posting medical misinformation about COVID-19 and vaccines. Mr. Mercola and his company then sued the defendants, claiming that the termination breaches YouTube's terms of service, violates the implied covenant of good faith and fair dealing, entitles them to restitution, and constitutes conversion of their video content. They seek monetary relief and access to the video content.[1] The court grants the defendants' Rule 12(b)(6) motion to dismiss: the parties' agreement allows YouTube to remove the content and precludes damages.

---

[1] Am. Compl. – ECF No. 21. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 22-cv-05567-LB

# STATEMENT

YouTube is an online video-sharing and social-media platform where users can watch, share, comment on, and upload videos.[2] To use YouTube, users agree to the Terms of Service and YouTube's Community Guidelines (collectively, the Agreement).[3] There are several provisions relevant to the motion.

First, there are provisions about YouTube's hosting of content.

Under the provision titled "Content on the Service," the Terms state, "YouTube is under no obligation to host or serve Content."[4]

The section titled "Your Content and Conduct" discusses uploading content, the requirement that content complies with the Terms, the Community Guidelines, and the law, the content provider's ownership of the content, YouTube's right to use the content, other YouTube users' right to access the content, and a provision titled "Duration of License." The last provision states: "The licenses granted by you continue for a commercially reasonable period of time after you remove or delete your Content from the Service. You understand and agree, however, that YouTube may retain, but not display, distribute, or perform, servicer copies of your videos that have been removed or deleted."[5]

Under the provision titled "Removal of Content," the Terms state: "If we reasonably believe that any Content is in breach of this Agreement or may cause harm to YouTube, our users, or third parties, we may remove or take down that Content in our discretion."[6]

Second, the Terms contain a "Limitation on Liability:"

> Except as required by applicable law, YouTube, its affiliates, officers, directors, employees and agents will not be responsible for any loss of profits, revenues,

---

[2] *Id.* at 2 (¶ 1).

[3] *Id.* at 3 (¶¶ 7–8).

[4] Terms of Serv., Ex. A to Lerner Decl. – ECF No. 25-2 at 5 (p.4). The complaint cites and quotes the Terms. *See, e.g.*, Am. Compl. – ECF No. 21 at 9 (¶ 38). The court considers the Terms and Guidelines under the incorporation-by-reference doctrine. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[5] Terms of Serv., Ex. A to Lerner Decl. – ECF No. 25-2 at 9–10 (pp. 8–9).

[6] *Id.* at 10–11 (pp. 9–10).

> business opportunities, goodwill, or anticipated savings; loss or corruption of data; indirect or consequential loss; [or] punitive damages caused by:
>
> 1. errors, mistakes, or inaccuracies on the service;
>
> 2. personal injury or property damage resulting from your use of the service;
>
> 3. any unauthorized access to or use of the service;
>
> 4. any interruption or cessation of the service;
>
> 5. any viruses or malicious code transmitted to or through the service by any third party;
>
> 6. any content whether submitted by a user or YouTube, including your use of content; and/or
>
> 7. the removal or unavailability of any content.
>
> This provision applies to any claim, regardless of whether the claim asserted is based on warranty, contract, tort, or any other legal theory.
>
> YouTube and its affiliates' total liability for any claims arising from or relating to the service is limited to the greater of: (A) the amount of revenue that YouTube has paid to you from your use of the service in the 12 months before the date of your notice, in writing to YouTube, of the claim; and (B) USD $500.[7]

Third, the Terms have a provision titled, "Modifying this Agreement:"

> We may modify this Agreement, for example, to reflect changes to our Service or for legal, regulatory, or security reasons. YouTube will provide reasonable advance notice of any material modifications to this Agreement and the opportunity to review them, except that modifications addressing newly available features of the Service or modifications made for legal reasons may be effective immediately without notice. Modifications to this Agreement will only apply going forward. If you do not agree to the modified terms, you should remove any Content you have uploaded and discontinue your use of the Service.[8]

Fourth, YouTube's Community Guidelines describe content that is not allowed on YouTube.[9] That includes medical misinformation, including "content about COVID-19 that poses a serious risk of egregious harm" and COVID-19 vaccine misinformation.[10]

Fifth, the Community Guidelines outline an enforcement process:

---

[7] *Id.* at 13–14 (pp. 12–13); Am. Compl. – ECF No. 21 at 12–13 (¶ 51). The entire provision is in capital letters.

[8] Am. Compl. – ECF No. 21 at 9 (¶¶ 38–41); Terms of Serv., Ex. A to Lerner Decl. – ECF No. 25-2 at 15 (p. 14).

[9] Am. Compl. – ECF No. 21 at 3 (¶ 8), 10 (¶ 43).

[10] Cmty. Guidelines, Exs. E–F to Lerner Decl. – ECF Nos. 25-6 to 25-7.

ORDER – No. 22-cv-05567-LB                    3

> If your content violates this policy, we'll remove the content and send you an email to let you know. If this is your first time violating our Community Guidelines, you'll likely get a warning with no penalty to your channel. If it's not, we may issue a strike against your channel. If you get 3 strikes within 90 days, your channel will be terminated. You can learn more about our strikes system here.
>
> We may terminate your channel or account for repeated violations of the Community Guidelines or Terms of Service. We may also terminate your channel or account after a single case of severe abuse, or when the channel is dedicated to a policy violation. You can learn more about channel or account terminations here.[11]

Dr. Mercola is a physician who had a substantial YouTube following: he began sharing video content in 2005 and by September 2021 had over 300,000 subscribers and fifty-million views.[12] On September 29, 2021, YouTube terminated the account and sent a notice explaining the grounds for termination: "We have reviewed your content and found severe or repeated violations of our Community Guidelines. . . . This account has been terminated due to multiple or severe violations of YouTube's policies on Medical Misinformation." The notice had a link to appeal the decision.[13] That day, the Washington Post published an article titled "YouTube is banning Joseph Mercola and a handful of other anti-vaccine activists." It had this introduction:

> YouTube is taking down several video channels associated with high-profile anti-vaccine activists including Joseph Mercola . . . .
>
> As part of a new set of policies aimed at cutting down on anti-vaccine content on the Google-owned site, YouTube will ban any videos that claim that commonly used vaccines approved by health authorities are ineffective or dangerous. The company previously blocked videos that made those claims about coronavirus vaccines, but not ones for other vaccines like those for measles or chickenpox.[14]

YouTube denied the plaintiffs' appeal that followed: "We reviewed your channel carefully, and have confirmed that it violates our Community Guidelines. . . . We won't be putting your channel back up on YouTube."[15]

---

[11] Am. Compl. – ECF No. 21 at 11 (¶ 44); Cmty. Guidelines, Ex. F to Lerner Decl. – ECF No. 25-7 at 4 (p. 3).

[12] Am. Compl. – ECF No. 21 at 2–3 (¶¶ 5–6, 9–10).

[13] *Id.* at 3 (¶ 10), 6 (¶ 24).

[14] *Id.* at 5 (¶ 19).

[15] *Id.* at 8 (¶ 33).

ORDER – No. 22-cv-05567-LB         4

The operative complaint has six claims: (1) breach of contract by failing to provide advance notice of the vaccine-misinformation policy before terminating the channel and account; (2) breach of contract by failing to warn the plaintiffs before the termination; (3) breach of the implied covenant of good faith and fair dealing; (4) specific performance to allow ongoing use of the platform and access to the content; (5) unjust enrichment by retaining the content; and (6) conversion by retaining the content.[16]

The court has diversity jurisdiction: the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[17] The court held a hearing on July 13, 2023.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves. . . ." *NorthBay*,

---

[16] *Id.* at 15–20 (¶¶ 65–113).

[17] Consents – ECF Nos. 12, 19.

838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should not give leave to amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal theory if given the opportunity").

## ANALYSIS

In their opposition, the plaintiffs define their case more narrowly than they do in the complaint: the plaintiffs say that they do not challenge YouTube's right to deny them a platform and instead challenge YouTube's preventing them from accessing their content.[18] The sum of it is that they want the content back. YouTube moves to dismiss all claims on three grounds: (1) the plaintiffs did not plausibly allege a breach of contract; (2) a limitation-on-liability provision applies to the claims and forecloses damages on contract and tort theories; and (3) Section 230(c)

---

[18] Opp'n – ECF No. 28 at 6. Count IV asks for specific performance in the form of ongoing use of the platform. Am. Compl. – ECF No. 21 at 19 (¶ 102). The prayer for relief asks for specific performance of the agreement "in a manner deemed appropriate by the Court and including at least Mercola's access to its video content, the value of which exceeds $75,000." *Id.* at 20 (¶ 114). The plaintiffs have narrowed their claim for relief to access to the video content.

of the Communications Decency Act bars the claims. The court grants the motion because the plaintiffs did not plausibly allege a breach and in any event, the limitation on liability forecloses damages.

**1. Contract Claims**

Under California law, the elements of a breach-of-contract claim are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, (2011) (cleaned up). "And if defendants were given the right to do what they did by the express provisions of the contract, there can be no breach." *Carma Devs. (Cal.) Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992).

As set forth in the Statement, YouTube had no obligation to host or serve content. The main issue is that the plaintiffs want access to the content. But no provision of the Agreement provides a right to access that content under the circumstances here: termination for cause under the agreement. In a different context, there is an avenue to export content: if YouTube terminates a user's access for service changes, it gives the user sufficient time to export content, where reasonably possible.[19] But that provision on its face does not apply here. The plaintiffs thus do not plead contract or quasi-contract claims related to denial of access to their content.

Similarly, as set forth in the Statement, YouTube had the discretion to take down content that harmed its users. The content here violated the Community Guidelines. Modifications to the Community Guidelines — such as the modification here to elaborate on YouTube's existing prohibitions on medical misinformation to add COVID-19 and vaccines — could be effective immediately, without notice. YouTube had the discretion to terminate channels without warning after a single case of severe abuse. Under the contract, this determination was discretionary: the

---

[19] Terms of Serv., Ex. A to Lerner Decl. – ECF No. 25-2 at 12 (p. 11).

contract said that "[i]f we reasonably believe that any Content is in breach of this agreement or may cause harm, . . . we may remove or take down that Content in our discretion."[20]

Cases confirm that YouTube can revoke access at its discretion. *See, e.g.*, *Daniels v. Alphabet Inc.*, No. 20-cv-04687-VKD, 2021 WL 1222166, at *2 (N.D. Cal. Mar. 31, 2021) (identical language in YouTube's Terms foreclosed a breach-of-contract claim premised on YouTube's removal of a video titled "Fauci Silenced Dr. Judy Mikovits from Warning the American Public"); *Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 881, 885 (N.D. Cal. 2015) (identical language foreclosed breach-of-contract claim premised on YouTube's removal of a video with an inflated view count).

Cases also confirm that the Terms do not give the plaintiffs a right of access to content from a terminated account. In *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118 (2015), YouTube terminated a user's account and then restored it, but some content allegedly was destroyed when the account was disabled. The plaintiff sued for breach of contract and sought either restoration of the channel or damages. *Id.* at 121–23, 126–27. The court found no breach because "there is no provision in the Terms of Service that requires YouTube to maintain particular content" or be a "storage site for users' content." *Id.* at 126–27. Similarly, in *King v. Facebook, Inc.*, a user sued for breach of contract after Facebook disabled her account and deleted its content. She alleged that Facebook breached its terms of service by destroying content associated with the account. 572 F. Supp. 3d 776, 780–81 (N.D. Cal. 2021). The court held that there was no breach: no provision in the agreement obligated Facebook to retain content, and destroying content did not "injure a user's core contractual right — the right to use Facebook's social media platform." *Id.* at 787–88.

The plaintiffs distinguish *Lewis* and *King* on the ground that the plaintiffs there sought different relief: the Mercola plaintiffs want an opportunity to access and remove their content, whereas the *Lewis* plaintiff challenged YouTube's failure to include their videos on the platform, and the *King* plaintiff alleged that "Facebook had an obligation to retain content."[21] But all of

---

[20] *See supra* Statement.

[21] Opp'n – ECF No. 28 at 16–17, 26 n.16.

ORDER – No. 22-cv-05567-LB           8

these cases are about access to content and a claim that the platforms wrongfully deleted content before the user could preserve it or denied access to it. *Lewis*, 244 Cal. App. 4th at 126 ("YouTube wrongfully deleted her videos"); *King*, 572 F. Supp. 3d at 787 ("after disabling her account, Facebook destroyed content").

This analysis forecloses the claim for specific performance in the form of access to the content.

In addition, the limitation-on-liability provision precludes damages attributable to any interruption or cessation of the service or the removal or unavailability of any content.

In sum, the plaintiffs do not plausibly plead claims for breach of contract.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing

The plaintiffs also claim that the defendants breached the implied covenant of good faith and fair dealing.[22] The claim is duplicative of the contract claims: it is about YouTube's failure to warn and failure to allow the plaintiffs to access the content.[23]

The covenant of good faith and fair dealing is implied in every contract and prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the contract. *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000). To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required her to do or she was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff. *Qingdao Tang-Buy Int'l Import & Export Co. v. Preferred Secured Agents, Inc.*, No. 15-cv-00624-LB, 2016 WL 6524396, at *5 (N.D. Cal. Nov. 3, 2016) (citing Judicial Council of California Civil Jury Instructions § 325 (2011); *Oculus Innovative Scis., Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007)).

---

[22] Am. Compl. – ECF No. 21 at 17–18 (¶¶ 85–92).

[23] *Id.* at 17–18 (¶ 90).

Again, YouTube's actions were permitted by the Terms of Service. The implied-covenant claim fails for this reason.

Regarding the last element — that the defendant's conduct harmed the plaintiff — "[c]ausation of damages in contract cases, as in tort cases, requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain." *Siqueiros v. Fed. Nat'l Mortg. Ass'n*, No. EDCV 13-01789-VAP (DTBx), 2014 WL 3015734, at *5 (C.D. Cal. June 27, 2014) (quoting *Vu v. Cal. Commerce Club, Inc.*, 58 Cal. App. 4th 229, 233 (1997)). "'The test for causation in a breach of contract action is whether the breach was a substantial factor in causing the damages.'" *Id.* (cleaned up) (quoting *US Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 909 (2005)). "'[M]ere conclusory statements do not suffice' to sufficiently state a breach of contract cause of action." *Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 F. App'x 401, 410 (9th Cir. May 2, 2018) (cleaned up) (quoting *Iqbal*, 556 U.S. at 678); *accord, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1029 (N.D. Cal. 2012). The limitation-on-liability provision forecloses relief (as discussed above).

3. **Unjust Enrichment**

Courts in this district have allowed standalone claims for unjust enrichment (even if there is a contract claim) to allow recovery of restitution "either (1) in lieu of breach of contract damages, where an asserted contract is found to be unenforceable or ineffective, or (2) where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct, but the plaintiff has chosen not to sue in tort." *Oracle Corp. v. SAP AG*, No. C 07-1658 PJH, 2008 WL 5234260, at *8 (N.D. Cal. Dec. 15, 2008) (citing *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004)); *see also Wolf v. Wells Fargo Bank, N.A.*, No. C 11-01337-WHA, 2011 WL 4831208, at *8 (N.D. Cal. Oct. 12, 2011) ("Restitution [under an unjust-enrichment theory] may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason."); *Yothers v. JFC Int'l, Inc.*, No. 20-cv-01657-RS, 2020 WL 5015262, at *6 (N.D. Cal. May 14, 2020).

The parties have an enforceable contact. There are no allegations about benefits obtained by fraud, duress, or the like. The plaintiffs did not plausibly plead a claim for unjust enrichment.

**4. Conversion**

"[A]ny act of dominion wrongfully exerted over the personal property of another inconsistent with the owner's rights thereto constitutes conversion." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (quoting *McCafferty v. Gilbank*, 249 Cal. App. 2d 569, 576 (1967)). To prove conversion, a plaintiff must establish: (1) "ownership of or right to possess the property in question at the time of the conversion, (2) that the defendant disposed of the plaintiff's property rights or converted the property by a wrongful act, and (3) damages." *Swingless Golf Club Corp. v. Taylor*, 732 F. Supp. 2d 899, 910 (N.D. Cal. 2010) (citing *Oakdale Village Grp. v. Fong*, 43 Cal. App. 4th 539, 544 (1996)).

The plaintiffs have not plausibly alleged a wrongful act. As discussed above, the Agreement did not require YouTube to host content. In *King*, the court dismissed a conversion claim based on Facebook's failure to retain her content because "Facebook was not under any obligation not to destroy (or to otherwise retain) the content associated with her account." 572 F. Supp. 3d at 792. The court dismisses the claim.

## CONCLUSION

The court dismisses the complaint. The contract bars the claims as a matter of law. The dismissal thus is without leave to amend.

This disposes of ECF Nos. 25 and 30.

**IT IS SO ORDERED.**

Dated: September 4, 2023

LAUREL BEELER
United States Magistrate Judge